UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

**FILED**

2003 NOV -4 P 1: 26

US DISTRICT COURT
BRIDGEPORT CT

THE SOUTHERN NEW ENGLAND            )
TELEPHONE COMPANY,                  )
                                    )
         Plaintiff,                 )
                                    )
    v.                              )   Civil Action No. 3:02CV0274
                                    )   (SRU)
MCI WORLDCOM COMMUNICATIONS,        )   NOVEMBER 4, 2003
INC., ET AL.,                       )
                                    )
         Defendants.                )

## SNET'S NOTICE OF SUPPLEMENTAL AUTHORITY

Plaintiff and counterclaim defendant the Southern New England Telephone Company ("SNET") respectfully submits this notice of supplemental authority to bring to the Court's attention a recent order of the Federal Communications Commission ("FCC") addressing matters pertinent to this case.[1] SNET seeks to draw the Court's attention to two aspects of the *Triennial Review Order* that are directly relevant to arguments made by SNET in both its Memorandum of Law in Support of its Motion for Summary Judgment ("Motion for Summary Judgment") (filed Jan. 3, 2003) and its Memorandum of Law on Reply in Support of its Motion for Summary Judgment and in Opposition to WorldCom's Motion for Summary Judgment ("Reply Brief") (filed Apr. 14, 2003).

1. In its *Triennial Review Order*, the FCC revisited its implementation of the federal unbundling obligations, *see* 47 U.S.C. §§ 251(c)(3), 251(d)(2), 252(d)(1), which require

---

[1] Report and Order and Order on Remand and Further Notice of Proposed Rulemaking, *Review of the Section 251 Unbundling Obligations of Incumbent Local Exchange Carriers*, CC Docket Nos. 01-338 *et al.*, FCC 03-36 (rel. Aug. 21, 2003), *petitions for review pending, United States Telecom Ass'n v. FCC*, Nos. 03-1310, *et al.* (D.C. Cir.) ("*Triennial Review Order*"). A copy of the *Triennial Review Order* is attached hereto as Exhibit A. Numerous carriers, including WorldCom and SNET's parent company, SBC Communications, have filed petitions for review of the *Triennial Review Order*. Those petitions have been consolidated and transferred to the United States Court of Appeals for the District of Columbia Circuit.

incumbent local exchange carriers ("LECs") such as SNET to make certain elements of their network available to other LECs at cost-based rates. Of particular importance, the FCC held "that competitive carriers that deploy their own switches are not impaired in any market without access to incumbent LEC call-related databases," including the Line Information ("LIDB") and Calling Name ("CNAM") databases at issue in this case. *Triennial Review Order*, ¶ 551. Noting that "[t]he record in this proceeding reveals that there are a number of competitive suppliers providing call-related database services that are comparable to the functionality of unbundled access, and these suppliers are actively providing such services to competitive LECs on a commercial basis," *id.* ¶ 553, the FCC found "that competing carriers are not impaired without access to incumbent LEC CNAM and LIDB databases," *id.* ¶ 554. Accordingly, the FCC concluded that incumbent LECs would no longer have any legal obligation to make their calling-related databases available at cost-based rates.

In light of this determination that incumbent LECs need not provide access to their call-related databases on an unbundled basis, the FCC expressly "dismiss[ed] as moot WorldCom's Petition for Declaratory Ruling requesting Commission confirmation that requesting carriers are entitled to access LIDB data at cost-based rates when they use such data to provide interexchange and exchange access service. Because, as explained above, we conclude that competitive carriers are not impaired without access to the LIDB database as a UNE, it is unnecessary for us to determine whether use restrictions should be applied." *Id.* ¶ 559 (footnotes omitted).[2]

In its first counterclaim in this proceeding, WorldCom challenged the DPUC's decision that WorldCom could obtain access to SNET's LIDB and CNAM databases on an unbundled

---

[2] In its Reply Brief, SNET noted that WorldCom had filed this Petition for Declaratory Ruling, and that the FCC had folded it into the Triennial Review proceedings. *See* Reply Br. at 38 n.21.

2

basis solely for use in serving "W[orld]Com's local service customers where SNET is the incumbent local exchange carrier." WorldCom's Second Amended Answer and First Amended Counterclaim and Cross-claim Answer ¶¶ 97, 104-107 (filed Jan. 13, 2003). WorldCom maintained that it was entitled to unbundled access to the LIDB and CNAM databases for use in providing any telecommunications service, including long distance services for non-local customers. *See* WorldCom's Memorandum of Law in Support of Motion for Summary Judgment at 22-24 (filed Feb. 12, 2003). But WorldCom's claim was premised on the assumption that it had a right to obtain access to the LIDB and CNAM databases on an unbundled basis, even when WorldCom was not serving customers through unbundled local switching purchased from SNET.[3] As the FCC recognized in dismissing as moot WorldCom's Petition for a Declaratory Ruling – a petition that sought the same relief, and raised the same arguments, as WorldCom's counterclaim in this Court – now that the FCC has eliminated incumbent LECs' legal obligation to provide access to their call-related databases on an unbundled basis, WorldCom can no longer claim that the DPUC has imposed an unlawful restriction on its access to those databases. As a consequence of the FCC's *Triennial Review Order*, WorldCom has no right to obtain unbundled access to SNET's LIDB and CNAM databases for non-local service customers, and its first counterclaim must be dismissed as moot.

2. In its *Triennial Review Order*, the FCC also rejected the argument that impairment should be assessed on a carrier-by-carrier, or business-strategy-by-business-strategy, basis. As the FCC explained, "a carrier- or business plan-specific approach would be administratively unworkable for regulators, incumbent LECs, and new entrants alike because it would require

---

[3] By definition, WorldCom is not purchasing unbundled switching from SNET to serve those customers that are the basis of its counterclaim -- namely, non-local service customers and customers outside of the region where SNET is the incumbent LEC. Where WorldCom purchases unbundled local switching from SNET, the only instance in which it can still obtain access to SNET's LIDB and CNAM databases at cost-based rates, it is necessarily serving local-service customers in the region where SNET is the incumbent LEC.

case-by-case determinations of impairment and continuous monitoring of the competitive situation." *Id.* ¶ 115.

When considering the circumstances under which incumbent LECs could be required to provide unbundled access to Operator Services and Directory Assistance ("OS/DA"), the FCC made clear that its rejection of a "carrier-specific approach" extended to the treatment of customized routing. In the *UNE Remand Order*,[4] the FCC explained, it had held that competitive LECs were not impaired without unbundled access to OS/DA provided that the incumbent carrier offered "a customized routing solution."[5] *See Triennial Review*, ¶ 560. Recognizing that "[t]he parties requesting the Commission to unbundle the databases underlying these services fail to provide evidence that the alternative providers [of operator services and directory assistance] cited in the *UNE Remand Order* no longer make these elements available," the FCC "reject[ed] the arguments of some parties that [it] should require incumbent LECs to provide unbundled access to [OS/DA]." *Id.* The FCC additionally clarified that an incumbent LEC need not cater to the whims of individual CLECs to avoid unbundling its OS/DA. Rather, in response to a Petition for Clarification filed again by WorldCom, the FCC explained that "customized routing must be provided in a manner that allows competitive LECs to efficiently access *either* a third party's OS/DA platform or their own OS/DA Platform." *Id.* ¶ 560 n.1734 (emphasis added).

This determination is directly relevant to SNET's claim in Count II of its First Amended Complaint that the DPUC could not legally require SNET to make its Operator Services and

---

[4] Third Report and Order and Fourth Further Notice of Proposed Rulemaking, *Implementation of the Local Competition Provisions of the Telecommunications Act of 1996*, 15 FCC Rcd 3696 (1999) ("*UNE Remand Order*"), *vacated United States Telecomm. Ass'n v. FCC*, 290 F.3d 415, 424 (D.C. Cir. 2002), *cert denied*, 123 S. Ct. 1571 (2003).

[5] "Customized routing" enables a CLEC to designate the particular pathway over which its subscribers' telephone calls will travel. *See UNE Remand Order*, 15 FCC Rcd at 3927, ¶ 441 n.867. A CLEC that purchases customized routing can thereby ensure that its customers' OS/DA traffic will travel directly to its own or to a third party's OS/DA platform.

4

Directory Assistance available to WorldCom on an unbundled basis and at cost-based prices until SNET provided the specific signaling protocol preferred by WorldCom. Rather, as SNET explained in its Motion for Summary Judgment (*see* pp. 25-32) and in its Reply Brief (*see* pp. 18-23), SNET need only offer *a* customized routing solution. Because federal law makes clear that SNET need only offer customized routing in a manner that allows competitive LECs to "access . . . a third party's OS/DA platform," *Triennial Review Order* ¶ 560 n.1734, and because it was undisputed that SNET offers such customized routing pursuant to a Connecticut state tariff, the DPUC's decision on Issue 35 must be reversed.

Dated at New Haven, Connecticut this 4th day of November, 2003.

                         Respectfully Submitted,

                         **Plaintiff,**
                         **The Southern New England**
                         **Telephone Company**

                         By _____
                            Timothy Jensen (ct 18888)
                            TYLER, COOPER & ALCORN, LLP
                            205 Church Street
                            P.O. Box 1936
                            New Haven, Connecticut 06510-1910
                            Telephone: (203) 784-8200
                            Facsimile:  (203) 789-8069

                            Peggy Garber – (ct 23755)
                            Vice-President, General Counsel
                              and Secretary
                            The Southern New England
                            Telephone Company
                            310 Orange Street
                            New Haven, Connecticut 06510
                            Telephone: (203) 771-2110
                            Facsimile:  (203) 771-6577
                            E-mail:    mg1653@sbc.com

*Of Counsel:*

Michael K. Kellogg (ct 23525)
David L. Schwarz (ct 23224)
Kellogg, Huber, Hansen,
 Todd & Evans, PLLC
1615 M Street, NW Suite 400
Washington, D.C. 20036
Telephone:    (202) 326-7900
Facsimile:    (202) 326-7999

                    *Counsel for the Southern New England Telephone Company*

6

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing was mailed, first class mail, postage prepaid to Robert S. Golden, Jr. and Tatiana D. Eirmann, Assistants Attorney General, 10 Franklin Square, New Britain, Connecticut 06051; Robert J. Sickinger, Esq., Cummings & Lockwood, LLP, Four Stamford Plaza, P. O. Box 120, Stamford, Connecticut 06904-0120; and to Michael B. DeSanctis, Jenner & Block, LLC, 601 13th Street N.W., Washington, D.C. 20005, on this 4th day of November, 2003.

_____
Timothy P. Jensen