IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| THE SOUTHERN NEW ENGLAND TELEPHONE COMPANY, ) ) ) Plaintiff, ) ) v. ) ) MCI WORLDCOM COMMUNICATIONS, ) INC., et al. ) ) Defendants. ) ) ) | Civil Action No. 3:02 CV274 (SRU) December 22, 2003 |

## MCI'S NOTICE OF SUPPLEMENTAL AUTHORITY AND RESPONSE TO SNET'S NOTICE OF SUPPLEMENTAL AUTHORITY

Defendants/Counterclaim and Cross-Claim Plaintiffs WorldCom, Inc., Brooks Fiber Communications of Connecticut, Inc., MCI WORLDCOM Communications, Inc., and MCImetro Access Transmission Services LLC (collectively "MCI"), by their undersigned attorneys, file this Notice of Supplemental Authority and Response to the Southern New England Telephone Company's ("SNET's") Notice of Supplemental Authority to clarify the impact of the Federal Communications Commission's ("FCC's") Triennial Review Order, on three of the issues that are in dispute in this case. In re Review of the Section 251 Unbundling Obligations of Incumbent Local Exchange Carriers Implementation of the Local Competition Provisions of the Telecommunications Act of 1996, CC Docket Nos. 01-338, et al., 68 Fed. Reg. 52276 (Sept. 2, 2003), ___ F.C.C.R. ___, ("Triennial Review Order") (attached to SNET's Notice of Supplemental Authority). SNET has thoroughly mischaracterized the Triennial Review Order.

The Triennial Review Order supports MCI, and does not render the call-related database issues before this Court moot or otherwise require reversal of the DPUC's decision on Issue 35.

1. The Triennial Review Order directly supports MCI's challenge to the DPUC's adoption of language that restricts MCI's ability to use SNET's Calling Name Database ("CNAM") and Line Information Database ("LIDB") to serve its long distance and other non-local customers. See MCI Br. at 21-26; MCI Reply Br. at 3-13. In the Order, the FCC reaffirmed and reissued its rule prohibiting all use restrictions, and rejected proposals that would limit a carrier's use of unbundled network elements ("UNEs") to only local service. 47 C.F.R. § 51.309(a) (2003) (attached to Triennial Review Order at Appendix B); Triennial Review Order ¶ 146; see also id. ¶¶ 143-45, 147-48.

The Triennial Review Order further made clear that, once a new entrant is entitled to access an incumbent's UNEs for the provision of local service (or any other "qualifying service"),[1] the entrant may use those UNEs to provide any additional services that it wishes to provide, including services to its long distance and exchange access customers. Id. ¶ 143; 47 C.F.R. § 51.309(d). As the FCC explained, "it would be wasteful for the network element not to be put to its maximum use." Id. Indeed, the FCC recognized that the imposition of use restrictions on competing carriers' use of UNEs is not only wasteful, but would "likely affect their ability to meaningfully compete against incumbent LECs. . . [and] would hamper a competitive LEC's ability to provide innovative service packages to customers, a result that would directly undermine the Act's explicit goal of encouraging innovation." Id. ¶ 146.

Here, the DPUC granted MCI unbundled access to SNET's CNAM and LIDB databases for use with its local customers. In light of the Triennial Review Order, as a matter of law MCI

---

[1] See Triennial Review Order ¶ 135 (defining and providing examples of qualifying services).

2

is entitled to use those UNEs for all services -- including for its long distance and other non-local customers. Therefore, the use restrictions imposed by the DPUC are unlawful.

SNET asserts that the DPUC's use restriction should be affirmed because MCI allegedly is no longer entitled to access SNET's CNAM and LIDB databases. SNET is wrong. First, as SNET concedes in footnote 3 of its Notice, new entrants remain entitled to access the incumbent's CNAM and LIDB databases wherever they lease the incumbent's switches. See 47 C.F.R. § 51.319(d)(4)(i) (attached to Triennial Review Order at Appendix B); Triennial Review Order ¶ 551 ("competitive carriers purchasing the switching UNE will have access to . . . the call-related databases").[2] Accordingly, MCI is still entitled to access SNET's CNAM and LIDB databases.

Second, the FCC did not implement a blanket change to parties' interconnection rights in the Triennial Review Order, but left all existing unbundling obligations in interconnection agreements in place. Instead, the FCC adopted a complex regime for state commissions to apply in the first instance to determine if and where a new entrant, like MCI, is impaired without access to the incumbents' switches and, therefore, is entitled to such access. That issue – where MCI is entitled to access SNET's switches – is not an issue in this case. Rather, that issue currently is being arbitrated before the DPUC, and it is undisputed in those proceedings that MCI will continue to be entitled to access many of SNET's switches throughout the state. The issue in this case is not whether MCI may access SNET's databases, but whether the DPUC may restrict MCI's use of those databases to which it does have access. As the Triennial Review Order and its accompanying regulations make clear, MCI is entitled to use SNET's databases for

---

[2] As the FCC explained, the CNAM and LIDB databases are accessed through the incumbents' switches and signaling networks. See Triennial Review Order ¶¶ 544, 551.

3

any and all services. Any other result is prohibited by the FCC's binding regulations and, according to the FCC, would be both wasteful and anticompetitive. Triennial Review Order ¶¶ 143, 146.

SNET mistakenly relies, SNET Notice at 2, on the fact that the FCC denied as moot MCI's Petition for a Declaratory Ruling on the uses to which it may put an incumbent's databases. SNET selectively quotes the FCC's decision denying MCI's petition as moot. In its recitation of the decision, SNET omits an important footnote wherein the FCC expressly refers back to that part of its order in which it prohibited all use restrictions and made clear that new entrants can use an incumbent's databases for non-local services. See Triennial Review Order ¶ 559 n.1729. Thus, the FCC's conclusion that MCI's petition was moot turned on the fact that where MCI does not get access to SNET's databases (not the issue in this case) it obviously cannot use them for non-local or any other services. However, where MCI does have access to SNET's databases for its local customers (the issue in this case), the FCC's rules prohibit any restriction on the uses to which they may be put, and nothing in the FCC's denial of MCI's petition is to the contrary.

2.  The Triennial Review Order directly supports the DPUC's conclusion that SNET must provide operator services and directory assistance ("OS/DA") as a UNE because it has failed to provide "customized routing" necessary to allow MCI to route its customers' calls efficiently. See MCI Br. at 48-54. SNET's position, both now and in its briefs on the merits, is that MCI must be content with any routing option SNET offers, even if it is entirely incompatible with MCI's network and forces it to make inefficient decisions as to how to route its traffic. That is precisely the anticompetitive dynamic that the FCC intended to proscribe.

4

In the <u>Triennial Review</u> Order, the FCC clarified that "customized routing must be provided in a manner that allows <u>competitive LECs</u> to <u>efficiently</u> access either a third party's OS/DA platform or their own OS/DA Platform." <u>Id.</u> ¶ 560 n.1735 (emphasis added). In doing so, the FCC emphasized that it was preserving its customized routing regime "for the same reasons [as those articulated] in the <u>UNE Remand Order</u>." <u>Id.</u> ¶ 560. There, the FCC had made clear that "customized routing" is not "customized" unless the incumbent accommodates the requesting carrier's (here MCI's) designated protocol. <u>UNE Remand Order</u> ¶ 463; MCI Br. at 50. Thus, it remains MCI's decision whether to use its own OS/DA platform or that of a third-party provider. <u>Id.</u>[3] Absent Feature Group D protocol (which SNET steadfastly refuses to offer), MCI cannot use its own platform (which it would prefer to do), nor can it efficiently access a third party's platform (which is why it would prefer to use its own). As a result, the routing offered by SNET – with SNET's own antiquated protocol – is not "customized" in any sense of the word and fails to fulfill SNET's obligation to provide MCI with access to SNET's own OS/DA platform as the FCC's binding regulations require. <u>See generally</u> MCI Br. at 48-54.

SNET's arguments to the contrary are without merit. First, the fact that the FCC <u>granted</u> MCI's petition for clarification, <u>see</u> SNET Notice at 4 (citing <u>Triennial Review Order</u> ¶ 560 n.1734), supports MCI, not SNET. In its petition, MCI sought clarification that the routing solution offered by an incumbent must allow MCI to access either its own platform or a third-party's platform <u>efficiently</u>. As MCI explained, without the appropriate protocol, MCI could do neither. The FCC granted that petition and did nothing to amend its earlier determination in the

---

[3] <u>See also</u> 47 C.F.R. § 51.319(d)(4)(ii) (2003) (incumbent carriers must provide a requesting carrier with unbundled OS/DA if they do "not provide that requesting telecommunications carrier with customized routing, or a compatible signaling protocol, necessary to use either a competing provider's operator services and directory assistance platform or the requesting telecommunications carrier's own platform") (attached to <u>Triennial Review Order</u> at Attachment B).

5

UNE Remand Order (the reasoning of which it expressly reaffirmed in the Triennial Review Order) that it is the requesting carrier – MCI – that is permitted to choose the technology that allows it to access the most efficient platform among the available options. See MCI Br. at 49-52. In plain terms, that's why it's called "customized" routing. If it were up to the incumbent to choose whose platform MCI had to access there would be nothing "customized" about it all.[4]

    3.    Finally, on an issue not identified by SNET, the Triennial Review Order also confirms the lawfulness of the DPUC's adoption of language that requires SNET to provide MCI combinations of unbundled network elements. See MCI Br. at 41-48. The FCC expressly reaffirmed its regulations that require incumbent carriers like SNET to provide UNE combinations. Triennial Review Order ¶ 573; 47 C.F.R. § 51.315. The interconnection agreement's combinations provision tracks those regulatory requirements to the letter. See MCI Br. at 45-46. The reaffirmed combinations requirement does not direct state commissions to conduct a further analysis into the competitive harm of denying combinations to competing carriers, or to independently assess new entrants' ability to perform the requested combinations for themselves. The FCC could have modified its combinations rules to impose the additional requirements propounded by SNET here, but chose to maintain a uniform national rule requiring combinations. Accordingly, the DPUC does not have the authority to conduct the analysis that SNET claims was lacking.

---

[4] A customized paint job on a car, for example, is the paint job of the customer's choosing. A "customized" paint job of the dealer's choosing is nonsensical. Thus, SNET's reliance on the FCC's general discussion and rejection of a carrier-specific impairment analysis is taken out of context. See SNET Notice at 3-4 (citing Triennial Review Order ¶ 115). There, the FCC was deciding what to look at – each individual carrier or requesting carriers generally – in determining whether to unbundle a particular element. It opted to look at requesting carriers generally and, under that standard, held that incumbents must unbundle their OS/DA platforms for all requesting carriers unless the incumbent offers a particular carrier a routing solution tailored to its specific needs.

## CERTIFICATION OF SERVICE

This is to certify that a copy of the foregoing NOTICE OF SUPPLEMENTAL AUTHORITY AND RESPONSE TO SNET'S NOTICE OF SUPPLEMENTAL AUTHORITY has been mailed postage prepaid this 22nd day of December, 2003, to the following counsel of record:

Timothy P. Jensen, Esq.
Tyler, Cooper & Alcorn, LLP
205 Church Street
P.O. Box 1936
New Haven, CT 06510-1910

Robert L. Marconi, Esq.
Tatiana Eirmann, Esq.
Department of Public Utility Control
10 Franklin Square
New Britain, CT 06051

Michael K. Kellogg, Esq.
David L. Schwarz, Esq.
Kellogg, Huber, Hansen, Todd & Evans, P.L.L.C.
1615 M Street, N.W.
Suite 400
Washington, DC 20036

_____
Robin M. Meriweather