UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| THE SOUTHERN NEW ENGLAND TELEPHONE COMPANY, ) ) ) | |
| Plaintiff, ) ) | |
| v. ) ) | Civil Action No. 3:02CV0274 (SRU) |
| MCI WORLDCOM COMMUNICATIONS, INC., ET AL., ) ) ) | January 6, 2004 |
| Defendants. ) ) | |

**SNET'S RESPONSE TO WORLDCOM'S NOTICE OF SUPPLEMENTAL AUTHORITY**

Plaintiff and counterclaim defendant the Southern New England Telephone Company ("SNET") respectfully submits this response to the recent filing of WorldCom, Inc., Brooks Fiber Communications of Connecticut, Inc., MCI WorldCom Communications, Inc., and MCImetro Access Transmission Services LLC (collectively "WorldCom") concerning the Federal Communications Commission's ("FCC") *Triennial Review Order*.[1] WorldCom's *Notice of Supplemental Authority and Response to SNET's Notice of Supplemental Authority* (filed Dec. 22, 2003) ("WorldCom's Notice") grossly mischaracterizes the FCC's *Triennial Review Order* and its effect on the current dispute. SNET offers this brief response to correct the record.

**1.** In the *Triennial Review Order*, the FCC definitively held that competitive local exchange carriers ("LECs") like WorldCom are not impaired without unbundled access to incumbent LECs call-related databases, including the LIDB and CNAM databases at issue here.

---

[1] Report and Order and Order on Remand and Further Notice of Proposed Rulemaking, *Review of the Section 251 Unbundling Obligations of Incumbent Local Exchange Carriers*, 18 FCC Rcd 16978 (2003), *petitions for mandamus and review pending*, United States Telecom Ass'n v. FCC, Nos. 00-1012, 00-1015, 03-1310 *et al.* (D.C. Cir.) ("*Triennial Review Order*").

*See Triennial Review Order,* 18 FCC Rcd at 17330-31, ¶ 554 ("We find, therefore, that competing carriers are not impaired without access to incumbent LEC CNAM and LIDB databases."). Having thus concluded that WorldCom has no legal right to obtain access to an incumbent LEC's CNAM and LIDB databases at cost-based rates, the FCC "also dismiss[ed] as moot WorldCom's Petition for Declaratory Ruling requesting Commission confirmation that requesting carriers are entitled to access LIDB data at cost-based rates when they use such data to provide interexchange and exchange access service. Because, as explained above, we conclude that competitive carriers are not impaired without access to the LIDB database as a UNE, it is unnecessary for us to determine whether use restrictions should be applied." *Id.* at 17333, ¶ 559. Because WorldCom has made the exact same arguments here that it presented in the dismissed Petition for Review – and seeks from this Court the same relief that it sought from the FCC – this Court should dismiss WorldCom's counterclaim as moot just as the FCC has done.

Notwithstanding the FCC's blanket rejection of WorldCom's position, WorldCom asserts that the *Triennial Review Order* somehow "supports" WorldCom's challenge to the DPUC's decision prohibiting WorldCom from obtaining unbundled access to SNET's LIDB or CNAM databases for use in providing long distance services to WorldCom's non-local customers. WorldCom contends that the *Triennial Review Order* does not moot its claim because WorldCom can still obtain unbundled access to SNET's LIDB and CNAM databases when WorldCom obtains unbundled switching. *See* WorldCom's Notice at 3. But in each instance where WorldCom purchases unbundled switching from SNET, WorldCom necessarily becomes that customer's local service provider. Because the DPUC's decision simply precludes WorldCom from using SNET's LIDB and CNAM databases on an unbundled basis to service its

2

purely long distance customers (as opposed to customers to whom WorldCom provides either local services alone or both local and long distance services),[2] that decision is entirely consonant with the *Triennial Review Order*. By contrast, where WorldCom does not purchase unbundled switching from SNET – the scenario addressed by the DPUC's Final Decision – the FCC has determined that WorldCom cannot legally obtain unbundled access to SNET's LIDB and CNAM databases for any use whatsoever. As SNET explained in its Notice of Supplemental Authority, that determination moots WorldCom's challenge to the DPUC's resolution of Issue 44d.[3]

WorldCom's lengthy and misleading discussion of both 47 C.F.R. § 51.309 (*see* WorldCom's Notice at 2-3) and state commission switching analyses (*see id.* at 3) have no relevance to or bearing upon the present case. Wherever the DPUC eventually determines that WorldCom can purchase unbundled switching to provide local service to "mass market" customers, WorldCom will also be able to access SNET's call-related databases at cost-based rates for use in conjunction with the switching UNE. Moreover, to the extent that WorldCom provides local service to an end user customer through unbundled switching, WorldCom can also access SNET's call-related databases on an unbundled basis for use in providing long distance or other services to that *specific* customer. That much is undisputed. But wherever WorldCom *cannot or does not* purchase unbundled switching, it *cannot* access SNET's LIDB or CNAM

---

[2] *See* Final Decision at 20, Issue 44d ("SNET provides LIDB Service and/or CNAM Database as set forth in this Appendix only as such services are used for WCOM's activities on behalf of WCOM's local service customers where SNET is the incumbent local exchange carrier.").

[3] WorldCom falsely contends that "the issue in this case" concerns the scenario where WorldCom "*does* have access to SNET's databases for its local customers." WorldCom's Notice at 4. Under the plain language of the DPUC's Final Decision, however, WorldCom can use SNET's call-related databases on an unbundled basis to service its local customers, whether WorldCom is providing only local service, or both local and long distance services to those customers. Likewise, the *Triennial Review Order* permits WorldCom to obtain unbundled access to SNET's LIDB and CNAM databases for those *local* customers that WorldCom services with unbundled switching. The only "issue in this case" is whether WorldCom can obtain unbundled access to SNET's LIDB and CNAM databases when WorldCom *does not* purchase unbundled switching. It cannot.

3

databases on an unbundled basis. On that point the *Triennial Review Order* is clear and WorldCom's assertion to the contrary is plainly false. WorldCom has really asked this Court to expand the narrow circumstances under which the FCC has directed SNET to provide unbundled, cost-based access to its LIDB and CNAM records.

Indeed, WorldCom's Notice turns the *Triennial Review Order* on its head. WorldCom contends that because it may be entitled to obtain unbundled access to local switching, and by extension to call-related databases, to serve *certain* customers, it can "use" those elements to serve *any* customer. But if WorldCom were correct, it could use those same elements to serve the very customers that, under the *Triennial Review Order*, WorldCom has no right to service on an unbundled basis. Likewise, if WorldCom were correct, it could use unbundled LIDB and CNAM access purchased from SNET in Connecticut to service its long distance customers in Florida. *Compare* Final Decision at 20, Issue 44d (prohibiting WorldCom from using unbundled LIDB or CNAM purchased from SNET "outside of the area where SNET is the incumbent local exchange carrier"). Neither proposition finds any support in the *Triennial Review Order*.

**2.** Nor is there any merit to WorldCom's assertion that the *Triennial Review Order* allows WorldCom to obtain unbundled access to SNET's operator services and directory assistance ("OS/DA"). WorldCom contends that when the FCC granted "*in part*" (*Triennial Review Order*, 18 FCC Rcd at 17333-34, ¶ 560 n.1735 (emphasis added)) WorldCom's petition for clarification, it necessarily adopted WorldCom's position as to the scope of the OS/DA unbundling obligation. *See* WorldCom Notice at 5. That is nonsense, and it completely ignores what the FCC did say. The FCC actually held that incumbent LECs need only provide OS/DA on an unbundled basis where they "do[] not provide customized routing necessary to use alternative providers." *Triennial Review Order*, 18 FCC Rcd at 17333-34, ¶ 560. Moreover, the

4

FCC made it clear that it had granted WorldCom's and AT&T's request for clarification *only* "to the extent they request the Commission to clarify that such customized routing must be provided in a manner that allows competitive LECs to efficiently access *either a third party's OS/DA platform or their own OS/DA Platform.*" *Id.* at 17333-34, ¶ 560 n.1735 (emphasis added). Because SNET indisputably offers customized routing in a manner that enables WorldCom or any other CLEC to efficiently access a third party OS/DA platform, SNET cannot legally be required to offer OS/DA on an unbundled basis.

WorldCom also misconstrues the import of the FCC's rejection of a carrier-specific analysis in considering whether any network element should be unbundled. *See* WorldCom Notice at 6 n.3. In the *Triennial Review Order*, the FCC held that individual carriers' business models, network configurations, and preferences are irrelevant to the unbundling analysis required by section 251(d)(2) of the 1996 Act. In considering whether to require the unbundling of OS/DA, the FCC naturally rejected the very carrier-specific analysis proffered by WorldCom in this case. Under WorldCom's misreading of the order, SNET would be obligated to offer unbundled OS/DA to every single carrier, notwithstanding the fact that any carrier can (and several carriers do) readily access a third party OS/DA platform, because WorldCom would prefer a different network solution. That proposition ignores the FCC's OS/DA analysis – which focuses on whether SNET allows access to *any* third party OS/DA platform – and would improperly "reward those carriers that are less efficient or whose business plans simply call for greater reliance on UNEs." *Triennial Review Order* 18 FCC Rcd at 17056-57, ¶ 115. It would also be "administratively unworkable," as SNET's obligation to offer unbundled OS/DA to all carriers would turn on whether any individual carrier sought some alternative or novel form of

5

routing, requiring the "case-by-case determinations of impairment and continuous monitoring of the competitive situation" that the FCC specifically rejected. *Id.*

**3.** As SNET explained in its papers, the Supreme Court's decision in *Verizon Communications Inc. v. FCC*, 535 U.S. 467 (2002) upheld the FCC's "additional combinations" rules only because they contained essential limitations on the burdens that could reasonably be imposed on incumbent LECs. Among other restrictions, the Supreme Court noted that the obligation on the part of an incumbent to combine elements for an entrant under Rules 315(c) and (d) *only arises* when the entrant is unable to do the job itself." *Id.* at 535 (emphasis added). In affirming the additional combinations rules, the *Triennial Review Order* necessarily reiterated this essential limitation on an incumbent LEC's obligations – a limitation that the DPUC's Final Decision unlawfully ignores.[4] *See* SNET's Br. at 22-24; SNET's Reply at 13-14.

The *Triennial Review Order* also makes clear that an incumbent LEC can only be required to perform the work necessary to combine network elements where such combinations are "technically feasible" in the rigorous sense articulated by the Supreme Court's *Verizon Communications* decision. *See Triennial Review Order*, 18 FCC Rcd at 17339-40, ¶ 574 ("such a combination must be technically feasible"); *id.* ("the limitation on technical feasibility is meant to preserve the reliability and security of the incumbent LEC's network, and a UNE combination is 'not technically feasible if it impedes an incumbent carrier's ability to retain responsibility for the management, control, and performance of its own network.'"). Because the DPUC's Final

---

[4] At times, the FCC also recognized the Supreme Court's finding that incumbent LECs need only "perform the functions necessary to provide UNE combinations," as opposed to performing the actual combination itself. *See Triennial Review Order*, 18 FCC Rcd at 17339, ¶ 573 ("As noted in the Supreme Court's *Verizon* decision, the statute does not specify which party must perform the functions necessary to effectuate UNE combinations."). *See also Verizon Communications*, 535 U.S. at 535 ("When an incumbent does have an obligation, the rules specify a duty to 'perform the functions necessary to combine,' not necessarily to complete the actual combination.") (quoting 47 C.F.R. § 51.315(c)-(d) (1997)). The DPUC's Final Decision, which requires SNET "to complete the actual combination," is also inconsistent with this plain language of the FCC's rules.

6

decision requires SNET to perform combinations even where doing so *is not technically feasible*, that Order is inconsistent with the FCC's rules, as described in the *Triennial Review Order*, and cannot stand. See SNET's Br. at 22-23; SNET's Reply Br. at 15.

Dated at New Haven, Connecticut this 6th day of January, 2004.

        Respectfully Submitted,

        **Plaintiff,**
        **The Southern New England**
        **Telephone Company**

        By_____
           Timothy Jensen (ct 18888)
           TYLER, COOPER & ALCORN, LLP
           205 Church Street
           P.O. Box 1936
           New Haven, Connecticut 06510-1910
           Telephone: (203) 784-8200
           Facsimile: (203) 789-8069

           Peggy Garber – (ct 23755)
           Vice-President, General Counsel
             and Secretary
           The Southern New England
           Telephone Company
           310 Orange Street
           New Haven, Connecticut 06510
           Telephone: (203) 771-2110
           Facsimile: (203) 771-6577
           E-mail:   mg1653@sbc.com

*Of Counsel:*

Michael K. Kellogg (ct 23525)
David L. Schwarz (ct 23224)
Kellogg, Huber, Hansen,
Todd & Evans, PLLC
1615 M Street, NW Suite 400
Washington, D.C. 20036
Telephone:   (202) 326-7900
Facsimile:   (202) 326-7999

        *Counsel for the Southern New England Telephone Company*

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing was mailed, first class mail, postage prepaid to Robert S. Golden, Jr. and Tatiana D. Eirmann, Assistants Attorney General, 10 Franklin Square, New Britain, Connecticut 06051; Robert J. Sickinger, Esq., Cummings & Lockwood, LLP, Four Stamford Plaza, P. O. Box 120, Stamford, Connecticut 06904-0120; and to Michael B. DeSanctis, Jenner & Block, LLC, 601 13th Street N.W., Washington, D.C. 20005, on this 6th day of January, 2004.

_____
Timothy P. Jensen