## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

|  |  |  |
|---|---|---|
| THE SOUTHERN NEW ENGLAND TELEPHONE COMPANY, | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Civil Action No. 3:02CV0274 (SRU) |
| MCI WORLDCOM COMMUNICATIONS, INC., ET AL., | ) ) ) | February 11, 2005 |
| Defendants. | ) ) | |

## SBC CONNECTICUT'S MOTION TO ALTER OR AMEND THE JUDGMENT

Pursuant to Rule 59(e) of the Federal Rules of Civil Procedure and this Court's Local

Rules, The Southern New England Telephone Company d/b/a SBC Connecticut ("SBC

Connecticut")[1] submits this Motion to Alter or Amend the Judgment entered on February 4,

2005.

One portion of the Court's reasoned and balanced decision threatens to have significant

unintended consequences in a developing area of federal telecommunications law. Because the

Court, in Part I(C)(3) of its decision, adopted a line of argument relating to foreign exchange

("FX") service that none of the parties had presented, the Court did not have the benefit of full

briefing on that subject. SBC Connecticut therefore did not have the opportunity to point out

that the district court decision on which the Court relied, *Global Naps, Inc. v. Verizon New*

*England Inc.*, 327 F. Supp. 2d 290 (D. Vt. 2004), had subsequently been amended in an

unpublished order. In that August 5, 2004 Order, a copy of which is attached as Exhibit A

---

[1] On January 15, 2004, The Southern New England Telephone Company began doing business under the SBC brand.

hereto, the *Global Naps* Court recognized that the Federal Communications Commission's ("FCC") *ISP Remand Order*[2] solely addressed "calls made to internet service providers . . . *located within the caller's local calling area.*" Memorandum Opinion and Order at 6, *Global Naps, Inc. v. Verizon New England Inc.* (D. Vt. Aug. 5, 2004) ("Order Amending Judgment") (quoting *WorldCom Inc. v. FCC*, 288 F.3d 429, 430 (D.C. Cir. 2002)) (emphasis added). Accordingly, the Vermont district court amended its decision to eliminate any suggestion that calls to an ISP located outside of the local calling area could not be subject to access charges. *See id.* at 6-7. SBC Connecticut respectfully requests that this Court do the same, amending its decision to delete the statement that "[t]he *ISP Remand Order* covers *all* ISP-bound traffic, without exception." Order at 19.[3]

Because WorldCom's briefing focused on the *Virginia Arbitration Order*, an argument that this Court appropriately rejected (*see id.* at 19 n.13), SBC Connecticut similarly did not have the opportunity to address the focus of this Court's decision – the interaction between sections 153(16), 153(48), and 251(b)(5) of the Communications Act of 1934, as amended by the 1996 Act. SBC Connecticut respectfully submits that this Court's application of 47 C.F.R. § 51.701 to FX and Virtual FX traffic is inconsistent with the FCC's long-standing interpretation of the 1996 Act and its implementing regulations. Insofar as it addressed the issue, the *ISP Remand Order* reaffirmed (rather than reversed) the FCC's historical determination that calls that travel outside the local exchange area are access calls, whether denominated as FX, long-distance, toll, or toll-

---

[2] Order on Remand and Report and Order, *Implementation of the Local Competition Provisions in the Telecommunications Act of 1996; Intercarrier Compensation for ISP-Bound Traffic*, 16 FCC Rcd 9151 (2001) ("*ISP Remand Order*") (subsequent history omitted).

[3] SBC Connecticut also requests that the Court excise or modify the reference to the now amended *Global Naps* decision, and alter the final sentence of the final paragraph of Part I(C)(3) to state that "any decision the DPUC makes on remand regarding FX traffic *may* have no direct effect on ISP-bound traffic."

free (*i.e.*, 1-800). For example, in adopting Section 51.701(b)(1), which subjects to reciprocal compensation telecommunications traffic that is not "interstate or intrastate exchange access, information access, or exchange services for such access," 47 C.F.R. § 51.701(b)(1), the FCC explained that all of the listed items are "access services" that "connect calls that travel to points – both interstate and intrastate – beyond the local exchange." *ISP Remand Order* ¶ 37. Such inter-exchange calls have always been subject to access charges.

Because of the procedural posture of the Connecticut Department of Public Utility Control's decision ("DPUC") on Virtual FX traffic, the Court also did not have before it the factual evidence establishing that FX and Virtual FX calls are toll calls "'for which there is made a separate charge not included in contracts with subscribers for exchange service.'" Order at 18 (quoting 47 CFR § 153(48)). That separate charge is simply paid by the customer that purchases the FX or Virtual FX service. SBC Connecticut respectfully requests that the Court amend its decision to allow the DPUC to determine, in the first instance, whether FX and Virtual FX calls qualify as exchange access under 47 U.S.C. §§ 153(16), (48) of the Communications Act.

### Discussion

SBC Connecticut recognizes that the standard for a Rule 59(e) Motion is strict, and that "reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked – matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995). Because the Court did not have the benefit of briefing, the Court did not have before it either the amended *Global Naps* opinion or a full discussion of FCC decisions addressing the legal nature of FX traffic. With respect to Part I(C) of the Court's decision, SBC Connecticut respectfully submits that this Motion is "necessary to correct manifest errors of law

or fact upon which the judgment is based." 11 Charles A. Wright and Arthur Miller, et al.,

*Federal Practice & Procedure* § 2810.1, at 125 (2d ed. 1995).

In light of the Vermont federal court's decision to amend its *Global Naps* opinion, this

Court's decision is now the only one in the country addressing the scope of the FCC's *ISP*

*Remand Order* and the question whether that order extends beyond traffic routed to local ISPs.

Likewise, this Court's decision is now the first to address whether federal law mandates

reciprocal compensation for FX and Virtual FX traffic. Yet the Court has reached these

decisions without the benefit of briefing or argument on the potentially far-reaching implications

of its decision. Because this Court's decision is inconsistent with the FCC's treatment of the

same issues, and because the DPUC has had the opportunity squarely to address these issues in

the first instance, SBC Connecticut respectfully submits that the decision should be amended as

further described below.

A.     The Interim Regime Established by the *ISP Remand Order* Applies Only to
       Traffic Routed to "Local" ISPs

In its *ISP Remand Order*, the FCC revisited the question whether reciprocal

compensation applies to "the delivery of calls from one LEC's end-user customer to an ISP in

the *same local calling area* that is served by a competing LEC." *Id.* ¶ 13 (emphasis added). As

in its initial *ISP Declaratory Ruling*, the FCC focused on calls that access "an ISP server located

in the same local calling area." *Id.* ¶ 10. Finding such calls to be analogous to other forms of

access traffic, in that they "travel to points . . . beyond the local exchange" and on to the global

Internet, the FCC held that such ISP-bounds calls are not subject to reciprocal compensation

under section 251(b)(5) of the 1996 Act. *Id.* ¶ 37. Rather, as this Court recognized, such calls

are subject to the FCC's interim rate regime established pursuant to its authority under 47 U.S.C.

§ 201. *See* Order at 11.

4

Critically, the FCC's entire discussion was focused on the proper treatment of calls to local ISPs.[4] As the D.C. Circuit made clear in its *WorldCom* decision, the FCC's analysis was addressed to "calls made to internet service providers . . . located within the caller's local calling area." 288 F.3d at 430. The FCC never held, as this Court suggested, that its "*ISP Remand Order* covers all ISP-bound traffic, without exception." Order at 19. Nor could the FCC have done so without repudiating its prior determination that Congress had not intended to disturb the "access regimes" that "both the [FCC] and the states had in place" for "calls that travel to points – both interstate and intrastate – beyond the local exchange." *ISP Remand Order* ¶ 37 & n.66 (discussing the *Local Competition Order*[5]). Instead, the FCC reaffirmed this position.

If the FCC's interim compensation regime had not been limited to calls within the same local exchange area, it would have imposed *new* obligations on incumbents to compensate competitors for ISP-bound traffic, enabling competitors to receive *more*, not *less*, compensation for such traffic. As this Court recognized, the FCC adopted "a transitional regime designed to gradually *decrease* reliance on carrier-to-carrier payments for recovery of costs" while moving towards a bill and keep arrangement for the exchange of traffic within the same local calling area. Order at 10 (emphasis added); *see also ISP Remand Order* ¶ 81 (refusing to extend transitional regime to new carriers because "our goal here is to address and curtail a pressing problem that has created opportunities for regulatory arbitrage and distorted the operation of

---

[4] *See, e.g.*, Declaratory Ruling in CC Docket No. 96-98 and Notice of Proposed Rulemaking in CC Docket No. 99-68, *Implementation of the Local Competition Provisions in the Telecommunications Act of 1996*, 14 FCC Rcd 3689, 3697-700, ¶¶ 12-14 (1999) (rejecting competitors' argument that ISP-bound traffic is subject to reciprocal compensation because it consists of two calls, one of which "terminate[s] at the ISP's *local* server" or "ends at the ISP's *local* premises") (emphases added) (subsequent history omitted); *ISP Remand Order* ¶¶ 8, 10 (noting that "an ISP's end-user customers typically access the Internet through an ISP server located in the *same local calling area*" but finding no "inherent differences between the costs of delivering a voice call to a *local* end-user and a data call to an ISP") (emphases added).

[5] First Report and Order, *Implementation of the Local Competition Provisions in the Telecommunications Act of 1996*, 11 FCC Rcd 15499 ("*Local Competition Order*") (subsequent history omitted).

competitive markets"). It is undisputed that, prior to the *ISP Remand Order*, incumbent LECs did not pay reciprocal compensation to competitors for toll, long-distance, or 1-800 calls, whether or not such calls were directed to ISPs. Rather, incumbent LECs received access charges for originating such calls.[6] Likewise, it is undisputed that the FCC intended to "confine" the "market problems" associated with reciprocal compensation, and to transition towards a "rational cost recovery regime." Even though the FCC's interim regime clearly does not require compensation where it was not previously required, this Court's decision – insofar as it appears to render *all* ISP-bound traffic subject to section 201 compensation, irrespective of whether such traffic has traditionally incurred access charges – appears to do just that.

When considering a similar motion to amend its original decision, the Vermont federal court in *Global Naps* recognized that "in context it is not certain that the FCC meant to eliminate intrastate access charge regimes." Order Amending Judgment at 5. After noting that the D.C. Circuit "panel was in no doubt that [SBC Connecticut's] interpretation of this aspect of the [*ISP*] *Remand Order* is the correct one," *id.* at 6, the *Global Naps* Court elected to amend its opinion to eliminate any holding that the *ISP Remand Order's* interim regime governed all ISP-bound traffic. *See id.* at 6-7. SBC Connecticut respectfully requests that this Court do the same by: (i) deleting the sentence on page 19 stating that "The *ISP Remand Order* covers all ISP-bound traffic, without exception"; (ii) deleting the reference on page 19 to the now-amended *Global*

---

[6] The Court's statements thus appear to create a new arbitrage opportunity by ostensibly relieving CLECs of the access charges they currently pay for 1-800 calls to their ISP customers. ISPs commonly offer 1-800 access, in addition to their VNXX "local" numbers, but charge their customers a per minute fee for using the 1-800 number, reflecting the costs of that service, which include the access charges paid to the carrier that originates the call (here, SBC Connecticut). If CLECs and their ISP customers no longer must pay those access charges, SBC Connecticut would continue to perform the work of transporting these calls, but without compensation. As this Court recognized, "non-local calls, either interstate or intrastate, do not need reciprocal compensation because they already have a cost-recovery mechanism in place, namely, access charges." Order at 6. The *ISP Remand Order* did not modify the compensation regime applicable to such calls when they are delivered to ISPs.

*Naps* decision; and (iii) changing the final sentence of Part I(C)(3) to state that "any decision the DPUC makes on remand regarding FX traffic *may* have no direct effect on ISP-bound traffic."

      B.      <u>FX and Virtual FX Traffic Are Not Telephone Exchange Services Subject to Reciprocal Compensation</u>

In reversing the DPUC's decision that FX and Virtual FX traffic are not subject to reciprocal compensation, this Court held that DPUC had improperly failed to "determine whether FX traffic is 'interstate or intrastate exchange access, information access, or exchange services for such access.'" Order at 17 (quoting 47 CFR § 51.701). As the Court noted, Section 153(16) of the Communications Act of 1934, as amended by the 1996 Act, defines "exchange access" to mean "the offering of access to telephone exchange services or facilities for the purpose of the origination or termination of telephone toll services." 47 U.S.C. § 153(16). "Telephone toll service," in turn, is defined as "telephone service between stations in different exchange areas for which there is made a separate charge not included in contracts with subscribers for exchange service." *Id.* § 153(48). Noting that "FX calls are billed exactly the same as local calls," this Court held that "FX service is not a toll service" and therefore is not a species of "exchange access." Order at 18. After concluding that FX traffic does not fall within one of the carve outs articulated in section 51.701 of the FCC's regulations, the Court held that such traffic must, therefore, be subject to reciprocal compensation as a matter of federal law. *See id.* at 17-19. Because neither the Court nor the DPUC had the benefit of full briefing on these issues, at least insofar as they have been framed by the Court, SBC Connecticut respectfully requests that the Court reconsider this holding and amend its decision. The Court should do so for the following six reasons:

*First*, in concluding that FX service is not a telephone toll service, the Court only considered whether the *calling party* pays a "separate charge" for placing an FX call. But

nothing in the statutory definition of "telephone toll service" requires that the separate charge be paid by the calling party. It is the party that purchases the FX service who pays a separate charge beyond the amount for ordinary "exchange service." That is the essence of FX and Virtual FX service. As with toll free (1-800) service, the *called party* pays a separate charge so that the *calling party* does not have to do so. Because FX and Virtual FX are telephone toll services, they fall within the statutory definition of "exchange access" and are therefore not subject to reciprocal compensation.

*Second*, the statutory context makes clear that Congress's definition of "telephone toll service" turns on the *type* of service provided and not on the rates paid by the calling party. The juxtaposition of the two terms in the statutory scheme makes clear that Congress understood "telephone *toll* service" in contradistinction to "telephone *exchange* service," which it defined as "service *within a telephone exchange*, or within a connected system of telephone exchanges . . . of the character ordinarily furnished by *a single exchange*, and which is covered by the exchange service charge." 47 U.S.C. § 153(47) (emphases added). A call that travels between customers in *more than one* local exchange is not telephone exchange service but is instead telephone toll service and, by extension, exchange access.

*Third*, the FCC has already recognized that FX service is a form of exchange access. In a 1998 decision, the FCC held that interLATA FX service is subject to access charges. *See* Memorandum Opinion and Order, *AT&T Corp. v. Bell Atlantic-Pennsylvania*, 14 FCC Rcd 556, ¶¶ 71, 80 (1998), *recon. denied*, 15 FCC Rcd 7467 (2000). The FCC has similarly interpreted exchange access to include toll-free calls where the *called* party, rather than the calling party, pays a separate charge. The most prominent example is 1-800 calls, which are toll-free to the caller, but for which the 1-800 service provider imposes a separate charge on the subscriber

receiving the call. As a result of that separate charge, the calls meet the definition of telephone toll service and, in turn, the definition of exchange access. Accordingly, the FCC has consistently held both that the 1-800 service provider is required to pay access charges to the originating carrier under federal law, and that the originating carrier of a call to a 1-800 number is not required to pay reciprocal compensation.[7]

*Fourth*, while the FCC has not had occasion to address whether Virtual FX calls are subject to access charges, the Commission has held that federal law *does not* require incumbent LECs to "pay reciprocal compensation for virtual [NXX] traffic." *MD/DC/WVa 271 Order*[8] ¶ 151. The FCC's interpretation of its own regulations is entitled to "substantial deference." *Thomas Jefferson Univ. v. Shalala*, 512 U.S. 504, 512 (1994); *see also Taylor v. Vt. Dep't of Educ.*, 313 F.3d 768, 780 (2d Cir. 2002) (same).

*Fifth*, as a purely factual matter, the FX and Virtual FX services provided by WorldCom are subject to "a separate charge not included in contracts with subscribers for exchange service." 47 U.S.C. § 153(48). While SBC Connecticut believes that the DPUC should have the opportunity to investigate these factual issues in the first instance, SBC Connecticut has attached as Exhibits B and C to this Motion relevant portions of the intrastate tariffs of MCImetro Access Transmission Services LLC ("MCImetro") and Brooks Fiber Communications of Connecticut ("Brooks Fiber"). As each of these tariffs makes clear, the subscriber purchasing FX service from these WorldCom entities pays a separate charge for the FX service. *See generally*

---

[7] *See, e.g.*, First Report and Order, *Access Charge Reform; Price Cap Performance Review for Local Exchange Carriers; Transport Rate Structure and Pricing; End User Common Line Charges*, 12 FCC Rcd 15982, ¶ 366 (1997).

[8] Memorandum Opinion and Order, *Application by Verizon Maryland Inc., et al., for Authorization To Provide In-Region, InterLATA Services in Maryland, Washington, D.C., and West Virginia*, 18 FCC Rcd 5212 (2003) ("*MD/DC/WVa 271 Order*").

MCImetro Tariff § 6.7; Brooks Fiber Tariff § 21.7.8. By definition, then, these services qualify as "toll services."

*Finally*, while the parties' briefing did not address the subject, FX service constitutes a form of "exchange service" as that term has been defined by the FCC. As this Court recognized, "exchange service" is not a defined term. Order at 18 n.10. But while the Court quoted the FCC's statement in the *ISP Remand Order* that the term "is closely related to the provision of exchange access and information access," *id.* (quoting *ISP Remand Order* ¶ 37 n.65), the Court omitted the FCC's remaining discussion in that same footnote. Specifically, the FCC declared that "the term 'exchange service' appears to mean, in context, the provision of services in connection with *interexchange* communications," *ISP Remand Order*, ¶ 37 n.65. Because FX and Virtual FX provide service that involves, by definition, "interexchange communications," it follows that FX and Virtual FX constitute an "exchange service" as that term has been interpreted by the FCC. Accordingly, these services are not subject to reciprocal compensation.

For all of these reasons, the Court erred in concluding that FX service is not a form of exchange access under section 153(16) of the Communications Act. Because the DPUC never considered whether FX service was either exchange access or an exchange service, focusing solely on whether FX traffic was local or inter-exchange in nature, SBC Connecticut respectfully requests that the Court permit the DPUC to address this question in the first instance without the constraints imposed by that portion of Part I(C)(3) that is inconsistent with binding FCC authority. Accordingly, SBC Connecticut requests that the Court amend Part I(C)(3) of its decision and remand the matter to the DPUC with instructions to determine, in the first instance, whether FX and Virtual FX services fall within the definitions of either exchange access and exchange service, as those terms have been construed by the FCC.

Respectfully submitted,

_____

Timothy Jensen – (ct 18888)
Tyler Cooper & Alcorn, LLP
205 Church Street
P.O. Box 1936
New Haven, CT 06509-0906
Telephone:     (203) 784-8200
Facsimile:     (203) 789-2133
E-mail:     jensen@tylercooper.com

*Of Counsel:*

Michael K. Kellogg (ct 23525)
David L. Schwarz (ct 23224)
Kellogg, Huber, Hansen, Todd,
 Evans, & Figel PLLC
1615 M. Street, NW Suite 400
Washington, D.C. 20036
Telephone:     (202) 326-7900
Facsimile:     (202) 326-7999

*Counsel for The Southern New England Telephone Company d/b/a SBC Connecticut*