# EXHIBIT A

U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

UNITED STATES DISTRICT COURT
FOR THE 2004 AUG 5 PM 1 10
DISTRICT OF VERMONT

CLERK

BY _____
DEPUTY CLERK

GLOBAL NAPS, INC.,                        :

    Petitioner-Appellant,                 :
                                          :
              v.                       :    Docket No. 2:03-CV-97
                                          :
VERIZON NEW ENGLAND INC. f/k/a            :
NEW ENGLAND TELEPHONE AND                 :
TELEGRAPH COMPANY d/b/a BELL              :
ATLANTIC - VERMONT, INC., VERMONT         :
PUBLIC SERVICE BOARD, and MICHAEL         :
H. DWORKIN, DAVID C. COEN, and            :
JOHN D. BURKE in their capacity as        :
board members,                            :
                                          :
    Respondents-Appellees.                :

## MEMORANDUM OPINION AND ORDER

Following this Court's Opinion and Order filed January 12, 2004, granting Verizon New England Inc.'s ("Verizon") motion for summary judgment, Verizon filed a motion to alter or amend the judgment pursuant to Rule 59(e) of the Federal Rules of Civil Procedure. Specifically, Verizon requests that the Court alter its judgment as follows: (1) delete the sentence: "Intercarrier compensation for ISP-bound traffic, regardless of the physical location of the ISP, is governed exclusively by the FCC," Op. and Order at 21; (2) delete the sentence: "To the extent that the Public Service Board ruled that access charges apply to ISP-bound traffic, its ruling is at odds with the FCC's ruling in the Remand Order," id. at 22; and (3) replace "although" with "regardless of whether," in the sentence: "Although the Board is

precluded from imposing access charges on ISP-bound traffic, it is not precluded from banning VNXX."  Id.  For the reasons that follow, the motion is granted in part and denied in part.

The standard for granting a Rule 59(e) "motion is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked--matters, in other words, that might reasonably be expected to alter the conclusion reached by the court."  Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995). "'[R]econsideration of a judgment after its entry is an extraordinary remedy which should be used sparingly.'"  Pac. Ins. Co. v. Am. Nat'l Fire Ins. Co., 148 F.3d 396, 403 (4th Cir. 1998) (quoting 11 Charles Alan Wright et al., Federal Practice and Procedure § 2810.1 (2d ed. 1995)).  Verizon has not specified the grounds upon which amendment is justified, but it appears to argue that "the motion is necessary to correct manifest errors of law or fact upon which the judgment is based."  11 Wright et al., supra, § 2810.1.

Verizon's objection to the language in this Court's opinion highlights a tension in the Federal Communications Commission's ("FCC") Remand Order.[1]  The FCC stated unequivocally in paragraph

---

[1]  Implementation of the Local Competition Provisions in the Telecomms. Act of 1996, Intercarrier Comp. for ISP-Bound Traffic, 16 F.C.R.R. 9151 (Apr. 27, 2001), remanded WorldCom, Inc. v. FCC, 288 F.3d 429 (D.C. Cir. 2002), cert. denied, 538 U.S. 1012 (2003).

2

82 of its Remand Order that "[b]ecause we now exercise our
authority under section 201 to determine the appropriate
intercarrier compensation for ISP-bound traffic, however, state
commissions will no longer have the authority to address this
issue." Remand Order at 9189 ¶ 82. Earlier in the Remand Order,
however, the FCC, in concluding that ISP-bound traffic was not
subject to the reciprocal compensation provisions of section
251(b)(5), stated that with the enactment of the
Telecommunications Act of 1996 ("the Act"),[2] Congress did not
intend to disrupt existing access regimes applicable to connect
calls that travel to points beyond a local exchange. Id. at
9167-68 ¶¶ 35-37. As the United States Supreme Court has noted,
the Act "is in many important respects a model of ambiguity or
indeed even self-contradiction. That is most unfortunate for a
piece of legislation that profoundly affects a crucial segment of
the economy worth tens of billions of dollars. The 1996 Act can
be read to grant . . . 'most promiscuous rights' to the FCC vis-
a-vis the state commissions . . . and the Commission has chosen
in some instances to read it that way." AT&T Corp. v. Iowa
Utils. Bd., 525 U.S. 366, 397 (1999).

Verizon interprets the Remand Order as affecting only ISP-
bound traffic that was subject to reciprocal compensation--calls

---

[2] Telecommunications Act of 1996, Pub. L. No. 104-104, 110 Stat.
56 (1996).

3

delivered to an ISP located in the caller's local calling area.
Mot. to Alter at 2 (Doc. 38). Global NAPs, Inc. ("Global") notes
that nothing in the Remand Order appears to limit the FCC's
ruling to intercarrier compensation for ISP-bound traffic that
previously was considered subject only to reciprocal compensation
rules. Opp'n at 2 (Doc. 39).

The FCC made clear its opinion that Congress did not intend
to subject access services (defined as including ISP-bound
traffic) to reciprocal compensation rules when it enacted the
1996 Act. Remand Order at 9168 ¶ 37. The FCC also made clear
its opinion that it retained the power to change the pre-existing
regulatory treatment of access services. Id. ¶ 39 (unless and
until the Commission by regulation should determine otherwise,
Congress preserved pre-Act regulatory treatment of access
services). To be sure, in the same paragraph the FCC noted
parenthetically that state commissions retained jurisdiction over
intrastate access services. Id. Later on, however, the FCC
stated more specifically that "although some traffic destined for
information service providers (including ISPs) may be intrastate,
the interstate and intrastate components cannot be reliably
separated. Thus, ISP traffic is properly classified as
interstate, and it falls under the Commission's section 201
jurisdiction." Id. at 9175 ¶ 52 (citing Southwestern Bell Tel.
Co. v. FCC, 153 F.3d 523, 543 (8th Cir. 1998)).

4

The FCC proceeded to discuss an appropriate interim intercarrier compensation mechanism for ISP-bound traffic. It observed that carriers currently recover costs of call transport and termination through combinations of carrier access charges, reciprocal compensation and end-user charges, depending upon the applicable regulatory regime. Id. at 9181 ¶ 66. Having concluded that the 1996 Act establishing reciprocal compensation did not apply to ISP-bound traffic, that it had jurisdiction under § 201, and that a uniform intercarrier compensation mechanism was desirable, it chose "a bill and keep regime in which all networks recover costs from their end-user customers and are obligated to deliver calls that originate on the networks of interconnecting carriers." Id. ¶¶ 66-67. In presenting the rationale for a bill and keep approach, however, the FCC contrasted bill and keep with reciprocal compensation, holding it largely responsible for the market distortions the FCC was attempting to remedy. See id. ¶¶ 67-76.

Thus, although the language employed in the Remand Order is unambiguous--"[b]ecause we now exercise our authority under section 201 to determine the appropriate intercarrier compensation for ISP-bound traffic, . . . state commissions will no longer have authority to address this issue," id. at 9189 ¶ 82--in context it is not certain that the FCC meant to eliminate intrastate access charge regimes, particularly ones that may have

5

predated the effective date of the Remand Order.

Although the correct interpretation of the FCC's ruling is decidedly open to debate, having reviewed the D.C. Circuit panel's decision remanding the Remand Order, the Court recognizes that the panel was in no doubt that Verizon's interpretation of this aspect of the Remand Order is the correct one. The panel described the FCC's Remand Order as holding "that under § 251(g) of the Act it was authorized to 'carve out' from § 251(b)(5) calls made to internet service providers . . . **located within the caller's local calling area**." WorldCom, Inc. v. FCC, 288 F.3d 429, 430 (D.C. Cir. 2002) (emphasis supplied), cert. denied, 538 U.S. 1012 (2003).

Moreover, as this Court itself indicated, its comments regarding the scope of the FCC's interim compensation scheme were dicta, not raised as part of Global's appeal and tangential to the issues before the Court. The parties did not brief the issue, and it is unnecessary to resolve precisely what the FCC meant. Accordingly, Verizon's motion to alter or amend is granted, as follows:

The sentence "[i]ntercarrier compensation for ISP-bound traffic, regardless of the physical location of the ISP, is governed exclusively by the FCC" is replaced by "[i]ntercarrier compensation for ISP-bound traffic is now governed by the FCC." See Op. & Order at 21.

6

The sentence "[t]o the extent that the Public Service Board ruled that access charges apply to ISP-bound traffic, its ruling is at odds with the FCC's ruling in the Remand Order," is replaced by "[t]o the extent that the Public Service Board ruled that access charges apply to ISP-bound traffic, its ruling could be challenged as at odds with the FCC's assertion of exclusive authority to determine appropriate intercarrier compensation for ISP-bound traffic." <u>See</u> Op. & Order at 22.

The sentence "[a]lthough the Board is precluded from imposing access charges on ISP-bound traffic, it is not precluded from banning VNXX," is replaced by "[r]egardless of whether the Board is precluded from imposing access charges on ISP-bound traffic, it is not precluded from banning VNXX." <u>See</u> <u>id.</u>

An amended opinion and order will issue forthwith.

Dated at Burlington, Vermont this 5 day of August, 2004.

William K. Sessions III
Chief Judge

7

# EXHIBIT B

MCImetro ACCESS TRANSMISSION SERVICES, LLC

CT. D.P.U.C. No. 7
Section 6 – Original Page 6

## EXCHANGE ACCESS OPTIONAL FEATURES

6.7    Foreign Exchange (FX) Service

### 6.7.1 Description

FX Service enables a Customer to receive Company-provided Exchange Access Service at a point outside the Local Exchange Service Area which normally serves the customer's location. FX service can be used to receive inward calls only. FX service has a minimum requirement of at least 48 lines.

The Local Exchange Calling Area and all Usage Service rates which apply to an FX Exchange Access Service are the same as those which regularly apply to other Company-provided Exchange Access Services bearing the same NPA-NXX designation.

Customers are prohibited from using FX service to place outbound calls including, but not limited to "911 " emergency numbers. This restriction is required in order to assure that emergency calls are routed to the Public Safety Answering Point serving the geographical area associated with the Customer's telephone number. The Company strongly recommends that each Customer maintain at least one telephone exchange service access line bearing an NPANXX designation associated with the Customer's actual geographic location for emergency use.

### 6.7.2 Rates

FX service charges are calculated on a either a line or trunk group basis dependent upon the type of Exchange Access Service facility being utilized.

Charges for each FX Exchange Access Service apply in addition to the service rates which would regularly apply for such Exchange Access Service. The following charges apply for each FX service:

FX Services -- Other Than Digital Trunk Services

|  | Non-Recurring | Monthly Recurring |
|---|---|---|
| Per Line:<br>    Inward Only | $0.00 | $20.00 |

FX Services -- Digital Trunk Services

|  | Non-Recurring | Monthly Recurring |
|---|---|---|
| Per Trunk (24 Channels):<br>    Inward Only | $0.00 | $20.00 |

---

issuedate:                                                                                         Effective:  January 1, 2004

Issued By:                                Pam Stinson, Tariff Administrator
                                          6 Concourse Parkway, Suite 3200
                                          Atlanta, Georgia 30328

MCImetro ACCESS TRANSMISSION SERVICES, LLC

## EXCHANGE ACCESS OPTIONAL FEATURES

6.8    Speed Dialing

6.8.1 Description

This optional feature allows the Customer to program the phone to dial frequently called local and long distance numbers by dialing abbreviated digits. This feature is available in two options, one is a eight (8) code list using one (1) digit speed codes and the other is a thirty (30) code list using two (2) digit speed codes. The customer can select either the eight (8) or thirty (30) option or both options for a combined total of thirty-eight (38) speed codes. Speed Dialing is billed per line and on a monthly recurring basis.

6.8.2 Rates

|  | Non-Recurring | Monthly Recurring |
|---|---|---|
| Option A: Eight (8) Code List Per Line | $5.00 | $2.00 |
| Option B: Thirty (30) Code List Per Line | $5.00 | $4.00 |

issuedate:

Effective:  January 1, 2004

Issued By:

Pam Stinson, Tariff Administrator
6 Concourse Parkway, Suite 3200
Atlanta, Georgia 30328