**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF CONNECTICUT**

| | |
|---|---|
| THE SOUTHERN NEW ENGLAND TELEPHONE COMPANY,    )<br> )<br> )<br>Plaintiff,    )<br> )<br>v.    )<br> )<br>MCI WORLDCOM COMMUNICATIONS,    )<br>INC., et al.,    )<br> )<br>Defendants.    )<br>_____)| Civil Action No. 3:02 CV274<br>(SRU)<br><br>March 7, 2005 |

**MCI'S OPPOSITION TO SBC'S MOTION TO ALTER OR AMEND THE JUDGMENT**

Robert Dolian
Federal Bar No. 04278 Ct.
CUMMINGS & LOCKWOOD
Four Stamford Plaza
P.O. Box 120
Stamford, CT 06904-0120

Michael B. DeSanctis
Federal Bar No. ct 22712
Robin M. Meriweather
JENNER & BLOCK LLP
601 Thirteenth Street, N.W.
Washington, D.C. 20005

*Counsel for Defendants/Cross-Claim Plaintiffs*

**TABLE OF CONTENTS**

SUMMARY......................................................................................................................1

ARGUMENT...................................................................................................................2

I.  SBC MAY NOT RELITIGATE ISSUES THAT THIS COURT HAS ALREADY
    DECIDED. ...............................................................................................................2

II. THIS COURT'S DETERMINATION THAT FX SERVICE WAS SUBJECT TO
    RECIPROCAL COMPENSATION WAS CORRECT AND WAS NOT A "CLEAR ERROR
    OF LAW" WARRANTING RECONSIDERATION..................................................6

    A.  The Court Properly Determined That the FCC's ISP Remand Order Governs All
        ISP-Bound Traffic..............................................................................................6

    B.  The Court's Conclusion That Foreign Exchange Service Is Not "Exchange
        Access" Service Was Not Error and Also Should Not Be Revisited...................10

CONCLUSION...............................................................................................................14

MCI WORLDCOM Communications Inc. and MCImetro Access Transmission Services LLC[1] (collectively "MCI"), through undersigned counsel, hereby oppose the Motion of the Southern New England Telephone Company, d/b/a SBC ("SBC") To Alter or Amend the Judgment ("Motion").

## SUMMARY

In this Circuit, "reconsideration of a previous order is an extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources." In re Health Mgt. Sys., Inc. Sec. Litig., 113 F. Supp. 2d 613, 614 (S.D.N.Y. 2000) (internal quotation marks and citation omitted). Accordingly Rule 59(e) neither "give[s] an unhappy litigant one additional chance to sway the judge" whenever it is dissatisfied with the outcome of a ruling, Gold v. Dalkon Shield Claimants Trust, No. 5:82-CV-383, 1998 WL 422900, at *4 (D. Conn. July 16, 1998) (internal quotation marks and citation omitted) (Tab 1 hereto), nor functions as "a substitute for appeal." United States ex rel. Mikes v. Straus, 78 F. Supp. 2d 223, 224 (S.D.N.Y. 1999) (internal quotation marks and citation omitted). Instead, a party may seek relief from a judgment only in three limited circumstances — where: (1) there has been an intervening change in the law; (2) new evidence exists that was not previously available; or (3) there is a need to correct a clear error of law or prevent manifest injustice. Straus, 78 F. Supp. 2d at 224; see also Gold, 1998 WL 422900, at *2. Such motions "may be granted only where the Court has overlooked matters or controlling decisions which might have materially influenced the earlier decision." Straus, 78 F. Supp. 2d at 224. The moving party bears a heavy burden to

---

[1] MCImetro Access Transmission Services LLC is the successor to Brooks Fiber Communications of Connecticut, Inc., which was a named Defendant and Cross-Claim Plaintiff when this appeal was initiated.

meet these stringent standards, and reconsideration motions typically are denied. LaRouche v. Webster, 975 F. Supp. 490, 492 (S.D.N.Y. 1996); Health Mgmt. Sys., 113 F. Supp. 2d at 614.

SBC's Motion does not come close to satisfying those exacting standards. As an initial matter, all of SBC's arguments could have been presented before this Court issued its ruling. Having failed to do so then, SBC may not now complain that the Court did not have the benefit of its position. SBC's arguments also fail on their merits. SBC offers little more than conclusory allegations that the Court could have interpreted the applicable statutory and regulatory requirements differently (and more favorably to SBC), and should have determined that foreign exchange ("FX") service is an "exchange access" or "toll" service. But SBC ignores that the Connecticut Department of Public Utility Control ("DPUC") has already determined that FX is not a toll service, and remarkably suggests that this Court must remand because the DPUC has not yet had an opportunity to review this issue. To the extent SBC does cite to any precedent, it is far from "controlling," and largely inapposite or, in some cases, misconstrued. In sum, SBC's Motion presents nothing that the Court had before it but failed to consider; instead it simply explains why SBC would have reached a different result if it were the presiding judge. SBC's disagreement with the Court's conclusions does not evince a "clear error of law," or demonstrate that this Court should revisit its well-reasoned determinations. SBC's motion for amendment or alteration of the judgment should therefore be denied.

## ARGUMENT

I.     SBC MAY NOT RELITIGATE ISSUES THAT THIS COURT HAS ALREADY DECIDED.

Although SBC pays lip service to the strict standards governing motions for reconsideration of a court's judgment, its Motion does precisely what those rules prohibit — it "seeks solely to relitigate an issue that was already decided." Schrader v. CSX Transp., Inc., 70

F.3d 255, 257 (2d Cir. 1995). This Court has already examined the Federal Communication

Commission's ("FCC's") ISP Remand Order[2] and the federal statutory provisions that define

"exchange access service" and "telephone toll service." Order at 8-13, 17-18. Applying those

rules, this Court properly determined that FX service is not an "exchange access" service and

therefore is subject to reciprocal compensation. Id. at 17-19. SBC does not point to any

"controlling decisions" that this Court failed to consider, Schrader, 70 F.3d at 257, but instead

offers its view on why the Court should have reached a different result. Indeed, many of its

current claims are simply repackaged versions of the points it raised to support its contention that

FX calls are not subject to reciprocal compensation because they are not "local." SBC's

apparent belief that the Court's legal conclusions were incorrect does not remotely approach the

showing needed to trigger reconsideration under Rule 59(e). See Straus, 78 F. Supp. 2d at 223-

24.

It cannot seriously be disputed that FX calls' eligibility for reciprocal compensation,

under the FCC's ISP Remand Order and the FCC regulations implementing that order and the

Telecommunications Act of 1996 ("the "Act"), 47 U.S.C. §§ 251 et seq., was squarely before the

Court. See MCI's Mem. of Law In Support of Mot. For Summary Judgment, at 26-37 ("MCI

Br."); SNET Mem. of Law In Opp. to MCI's Mot. For Summary Judgment, at 41-46 ("SNET

Br."); MCI's Reply Mem. of Law In Support of Mot. For Summary Judgment, at 24-25 ("MCI

Reply Br."). In pre-argument briefing, SBC argued that FX traffic should not be subject to

reciprocal compensation. SNET Br. at 41-46. MCI contended that neither the Act nor the FCC's

orders and regulations distinguished FX traffic from other traffic destined for internet service

---

[2] In re Implementation of the Local Competition Provisions in the Telecommunications Act of
1996, Intercarrier Compensation for ISP-Bound Traffic, 16 F.C.C.R. 9151 (2001), remanded,
WorldCom, Inc. v. FCC, 288 F.3d 429 (D.C. Cir. 2002).

providers ("ISP-bound traffic"), and therefore reciprocal compensation should be required for FX traffic. MCI Br. at 29-31. The FCC's reciprocal compensation rules have not changed since the case was briefed and argued. Thus SBC's latest submission merely offers a spin on the position SBC staked out in pre-argument briefing.

SBC's suggestion that it could not have presented its arguments before the Court issued its ruling is therefore incorrect. MCI asserted in its opening brief that the "ISP Remand Order made no distinction between FX traffic and other traffic otherwise subject to . . . reciprocal compensation." MCI Br. at 30. MCI further noted that "[a]ll parties appear to agree that the FCC's ISP Remand Order applies to this case." Id. at 29. To the extent SBC believed, as it now suddenly claims, that the 2001 ISP Remand Order governs only "local" traffic, it should have made that claim in its opposition brief. But it did not. Given that SBC devoted the bulk of its brief to arguing that FX traffic is not "local," it was plainly on notice that the so-called 'local-only' restriction in the ISP Remand Order was pertinent to its legal position.

SBC had a similar opportunity to raise its current theory that FX is an "exchange access" service. MCI argued that FX is classified as a local "exchange service" in SNET's tariff, MCI Br. at 34, and thus was not a toll call. SBC stated in its opposition brief, as it does now, that FX was among the categories of traffic excluded from reciprocal compensation under Rule 51.701(b). SNET Br. at 44-45. It could have developed that argument to include its current contention that FX is an "exchange access service." Again, it did not.

SBC is not entitled to another bite at the apple simply because the Court rejected MCI's interpretation of the FCC's Virginia Arbitration Order.[3] MCI argued under that decision that the

---

[3] In re Petition of WorldCom, Inc. Pursuant to Section 252(e)(5) of the Communications Act For Preemption of the Jurisdiction of the Virginia State Corporation Commission Regarding

FCC's rules require reciprocal compensation for FX traffic. This Court agreed with the result MCI advocated, but disagreed with MCI on the applicability of the <u>Virginia Arbitration Order</u>. That is hardly remarkable or grounds for rehearing. The Court rested its ruling on the plain language of the FCC rules and statutory provisions that govern reciprocal compensation, all of which were squarely before the Court and necessary for it to rule on the issues presented. As noted, those laws have not changed, and it is beyond dispute that the role of the federal courts is to interpret federal statutes and regulations.

Moreover, had the Court agreed with MCI's interpretation of the <u>Virginia Arbitration Order</u>, the Court would have reached the same conclusion — namely, that FX traffic is subject to reciprocal compensation. SBC would then seek reconsideration (or appeal) on the same theory it raises in its Motion — that including FX among the carriers' reciprocal compensation obligations conflicts with the statutory scheme and regulations. Indeed, SBC raised these very arguments in a more limited fashion when opposing MCI's assertion that federal law required reciprocal compensation for FX traffic, citing the same FCC order on which it currently relies. SNET Br. at 44-45; <u>id.</u> at 46 (citing <u>Maryland/DC/West Virginia 271 Order</u>[4]).

SBC thus had every opportunity to present all of its theories concerning why FX traffic should be excluded from reciprocal compensation under those rules. SBC can blame no one but itself for its failure to brief in adequate detail its position on these legal issues. A reconsideration petition is not the proper vehicle for correcting those omissions. <u>Larouche</u>, 975 F. Supp. at 492

---

Interconnection Disputes With Verizon Virginia, Inc. And For Expedited Arbitration, 17 F.C.C.R. 27,039 (2002) ("<u>Virginia Arbitration Order</u>").
[4] <u>Application by Verizon Maryland, Inc. et al. for Authorization to Provide In-Region, InterLATAServices In Maryland, Washington, D.C., and West Virginia</u>, 18 F.C.C.R. 5212 (2003).

(noting that reconsideration is "not the forum for . . . plugging the gaps of a lost motion")

(internal quotation marks and citation omitted).

## II.    THIS COURT'S DETERMINATION THAT FX SERVICE WAS SUBJECT TO RECIPROCAL COMPENSATION WAS CORRECT AND WAS NOT A "CLEAR ERROR OF LAW" WARRANTING RECONSIDERATION.

SBC identifies two purported "clear error[s] of law" in its Motion.  First, SBC claims that

the Court misinterpreted the FCC's ISP Remand Order as applying to all ISP-bound traffic and

eliminating the prior distinction between "local" and non-local (or toll) traffic for purposes of

reciprocal compensation.  Second, SBC claims that FX service is an "exchange access" service

and thus is outside the reciprocal compensation regime.  SBC also suggests that the DPUC has

not yet determined whether FX is an "exchange access" service, and requests that the Court

remand this issue to the DPUC for further proceedings.  The Court's judgment and resolution of

these legal issues was correct, and should not be revisited.  Given that the DPUC has already

determined that FX is not a toll or "exchange access" service, there is nothing further for it to

consider on remand.  Thus SBC's motion should be denied.

### A.    The Court Properly Determined That the FCC's ISP Remand Order Governs All ISP-Bound Traffic.

This Court correctly determined that, although the DPUC based its exclusion of FX from

reciprocal compensation upon its belief that FX traffic was not "local," the FCC has expressly

disavowed its prior reliance on a call's jurisdictional status as "local" or "long distance" as a

basis for determining its eligibility for reciprocal compensation.  Order at 17-19; ISP Remand

Order, ¶¶ 34-35.  The current FCC regulations replace the "local" vs. "toll" distinction that

previously governed reciprocal compensation with an inquiry that asks whether traffic is

"interstate or intrastate exchange access, information access, or exchange services for such

access."  47 C.F.R. § 51.701; see Order at 17.  Reciprocal compensation applies to all but those

6

types of telecommunications traffic.  47 C.F.R. § 51.701; Order at 17-18.  That differs from the

prior FCC rules that provided that reciprocal compensation applied solely to "local" traffic.  See

47 C.F.R. § 51.701(a) (2000); see also Bell Atlantic Tel. Cos. v. FCC, 206 F.3d 1, 4 (D.C. Cir.

2000).

This Court also correctly ruled that the FCC's ISP Remand Order governs ISP-bound

traffic regardless whether it is FX.  Order at 19.  Again, the Court's ruling tracks the express

terms of the ISP Remand Order.  Specifically, the FCC stated that "[b]ecause we now exercise

our authority under Section 201 to determine the appropriate intercarrier compensation for ISP-

bound traffic, . . . state commissions will no longer have authority to address this issue."  ISP

Remand Order ¶ 82; Order at 11 (citing same).[5]  This Court's ruling is also in accord with other

precedent from this district.  See Southern New England Tel. Co. v. Connecticut Dep't of Pub.

Util. Control, 285 F. Supp. 2d 252, 259 (D. Conn. 2003) (noting that ISP Remand Order

"prospectively prohibited state commissions from taking action regarding inter-carrier

compensation for ISP-bound traffic").  The DPUC and other state commissions also have

recognized that this clear statement stripped state commissions of jurisdiction to determine, on a

prospective basis, whether ISP-bound traffic is subject to reciprocal compensation.  See DPUC

Investigation of the Payment of Mutual Compensation for Local Calls Carried Over Foreign

Exchange Service Facilities, No. 01-01-29, 2002 Conn. PUC LEXIS 23, at *118-*119 (Conn.

Dep't Pub. Util. Control Jan. 30, 2002) ("DPUC FX Order") (Tab 2 hereto); see also, e.g., All

Providers of Local and Interexchange Telecommunications Services in the State of Alabama

Declaratory Ruling Concerning the Usage of Local Interconnection Services for the Provision of

_____

[5] State commissions have jurisdiction to determine issues related to ISP-bound traffic in certain other circumstances, e.g., when interpreting interconnection agreements adopted prior to the ISP Remand Order and in additional situations identified in the ISP Remand Order.

7

Virtual NXX Service, No. 28906, 2004 Ala. PUC LEXIS 144, at *56-*57 (Ala. Pub. Serv. Comm'n Apr. 29, 2004) (concluding that in light of the ISP Remand Order it "has no authority to render determination regarding the ISP-bond FX/VNXX traffic referenced in this proceeding") (Tab 3 hereto); In re Allegiance Telecom of Ohio, Inc.'s Petition for Arbitration of Inter-connection Rates, Terms and Conditions, and Related Arrangements with Ameritech Ohio, No. 01-724-TP-ARB, 2001 Ohio PUC LEXIS 712, at *19-*20 (Pub. Utils. Comm'n Ohio Oct. 4, 2001) (clarifying that "all ISP-bound traffic, both local and non-local, is subject to the FCC's regime found in the ISP Remand Order") (Tab 4 hereto).

SBC has not introduced any "controlling precedent" from the FCC or the Second Circuit that shows that these rulings were "clear error." Nor could it. Instead, SBC contends that "context" shows that the ISP Remand Order means something other than what it says, and that a subsequent modification to a Vermont district court decision that this Court cited as additional support for portions of its conclusions somehow indicates that this Court should alter its own holding. Those assertions do not remotely prove that reconsideration is warranted.

Nothing in the ISP Remand Order draws this Court's rulings into question. As noted, the FCC renounced its prior focus on a call's jurisdictional status as "local," and codified that modification in its binding regulations. ISP Remand Order ¶ 34. No matter what SBC may wish to read into the "context" of the FCC's order, until the FCC issues a further explanation, the rules are clear, and those rules lead inexorably to the conclusion this Court reached.[6] The FCC's intent to supplant state commission regulation of ISP-bound traffic pursuant to the terms of the

---

[6] MCI argued to the D.C. Circuit in challenging the ISP Remand Order that the order should have been vacated because the FCC's interpretation of 47 U.S.C. § 251(g) was not supported by the statute and its decision to establish a new intercarrier compensation regime was arbitrary and capricious. See WorldCom, Inc. v. FCC, 288 F.3d 429 (D.C. Cir. 2002). As this Court noted, the ISP Remand Order has not been vacated. See Order at 10.

ISP Remand Order is equally plain. ISP Remand Order ¶ 82. While SBC may prefer to read the ISP Remand Order more narrowly, that does not make this Court's straightforward application of that order and its implementing regulations a "clear error of law."

SBC's reliance on an unpublished order modifying Global NAPS, Inc. v. Verizon New England, No. 2:03-CV-97 (D. Vt. Aug. 5, 2004) (Mot. at Exh. A), is equally misplaced. As an initial matter, that decision is hardly "controlling precedent" necessitating reconsideration under Rule 59(e). Further, SBC mischaracterizes the scope of that court's ruling. The court did not, as SBC suggests, conclude that the ISP Remand Order applies only to "local" traffic, or that the ISP Remand Order permits state commissions to determine whether ISP-bound traffic qualifies for reciprocal compensation. To the contrary, the court recognized that the language of the ISP Remand Order was "unambiguous." Id. at 5. The court elected not to decide whether the "context" Verizon cited drew those unambiguous statements into question, reasoning that "its comments regarding the scope of the FCC's interim compensation scheme were dicta, not raised as part of Global's appeal and tangential to the issues before the court." Id. at 6. The court therefore revised its prior definitive conclusions to avoid expressing an opinion on the scope of the ISP Remand Order and its effect on future state commission rulings. Id. at 6-7. Thus this Court's application of the plain language of the ISP Remand Order and its implementing regulations does not conflict with Global NAPS.

Moreover, the reasons supporting the Global NAPS court's revision of its clear (and correct) earlier statements do not apply to this case. This Court could not review MCI's challenge to the DPUC's exclusion of FX traffic from reciprocal compensation without assessing the nature of FX traffic, the federal law governing reciprocal compensation, and the DPUC's authority to apply those rules. Thus this Court's discussion of the meaning of the FCC's

9

reciprocal compensation rules and the preemptive effect of the ISP Remand Order is not dicta,

but is central to the parties' dispute. The Court should therefore deny SBC's request to strike the

portions of its decision that interpret and discuss the FCC's ISP Remand Order.

### B.    The Court's Conclusion That Foreign Exchange Service Is Not "Exchange Access" Service Was Not Error and Also Should Not Be Revisited.

The Court's conclusion that FX is not an "exchange access" service, and therefore is

subject to reciprocal compensation, also was a correct application of the governing legal

standards. Order at 17-19. The DPUC could not lawfully exclude FX traffic from the parties'

reciprocal compensation obligations unless FX were "exchange access service," or an exchange

service used to provide "exchange access." 47 C.F.R. § 51.701.[7]

The definition of "exchange access" does not appear to be in dispute. As this Court

recognized, "'[e]xchange access' means 'the offering of access to telephone exchange services or

facilities for the purpose of origination or termination of telephone toll services.'" Order at 18

(quoting 47 U.S.C. § 153(16)). "Telephone toll service," in turn, is "telephone service between

stations in different exchange areas for which there is made a separate charge not included in

contracts with subscribers for exchange service." Id. (quoting 47 U.S.C. § 153(48)).

Although SBC claims otherwise, the DPUC has already determined that the FX services

offered in Connecticut are not toll services. Order at 15-16; Petition of PaeTec Communications,

Inc. for Resolution of Disagreement with Southern New England Tel. Co. Second Reopening,

No. 01-08-19RE02, 2003 Conn PUC LEXIS 186, at * 9-*10 (Conn. Dept Pub. Util. Control Dec.

17, 2003) (noting that "VFX calls are not a toll service as defined in the Act") (Tab 5 hereto).

The DPUC also has specifically declined to subject FX calls to the access charges that apply to

"exchange access." Order at 18; DPUC FX Order at *128-*129. Thus there is nothing for the

---

[7] SBC did not contend then, nor does it claim now, that FX traffic is "information access."

DPUC to consider on remand, and nothing remarkable about this Court's identical holding.

Indeed, at least one other state commission has likewise determined that FX is not an "exchange

access service." See, e.g., In re TDS Metrocom, Inc., No. U-12952, 2001 Mich. PSC LEXIS

332, at*40-*41 (Mich. Pub. Serv. Comm'n Sep. 7, 2001) ("[B]y definition, FX service is not a

toll service and is not included within the exemption from reciprocal compensation") (Tab 6

hereto).

      This Court's, and the DPUC's, conclusion that FX is not "exchange access" is fully

consistent with federal law.  SBC concedes that "the FCC has not had the occasion to address

whether Virtual FX calls are subject to . . . reciprocal compensation." Mot. at 9.  Yet it then

selectively quotes an FCC order and claims that "the Commission has held that federal law <u>does</u>

<u>not</u> require incumbent LECs to 'pay reciprocal compensation for virtual [NXX] traffic.'"  <u>Id.</u>

(quoting <u>Maryland/DC/West Virginia 271 Order</u>).  SBC's selective quotations are revealing.  In

the order SBC cites, another carrier (Starpower) alleged that Verizon should pay reciprocal

compensation for FX traffic, and Verizon countered that FX was "non-local access traffic."

<u>Maryland/DC/West Virginia 271 Order</u> ¶ 150.  Far from reaching a definitive conclusion, as

SBC suggests, the FCC actually declined to resolve Starpower's claim in the unique context of

section 271 proceedings[8] and suggested that Starpower pursue the claim elsewhere:

> As we have found in previous proceedings, given the applicable time constraints,
> the section 271 process simply could not function if we were required to resolve
> every interpretive dispute between a BOC and each competitive LEC about the

---

[8] That order arose under Section 271 of the Act, which establishes procedures for carriers that seek to enter the long-distance market.  Because the FCC has only 90 days to review applications for Section 271 approval, it conducts an abbreviated analysis of the legality of challenged terms. It does not engage in a comprehensive <u>de novo</u> review of state commission rulings. Accordingly, the FCC has recognized that this truncated analysis is not a substitute for the substantive review of UNE terms required under Section 252 of the Act.  <u>See Virginia Arbitration Order</u> ¶ 53 n.123; <u>WorldCom, Inc. v. FCC</u>, 308 F.3d 1, 5 (D.C. Cir. 2002).

precise content of the BOC's obligations to its competitors. . . . To the extent Starpower has such a claim, a complaint before the state commission, or this Commission pursuant to section 208, is the more appropriate means for raising such allegations. <u>We decline to resolve Starpower's claim in the context of this proceeding</u>.

<u>Id.</u> ¶ 151 (emphasis added; footnote omitted). The full text of the FCC's statement, not the selective portion that SBC cites, confirms that the holding in no way conflicts with this Court's ruling.

<u>AT&T Corp. v. Bell Atlantic Pennsylvania</u>, 14 F.C.C.R. 556 (1998), is equally inapposite. The FCC did not determine in that proceeding whether FX is "exchange access" as defined in Section 153, or whether FX is subject to reciprocal compensation. That dispute concerned whether FX calls were delivered over a "common line" and thus should incur the access charges that apply to such lines. Further, that ruling predated the <u>ISP Remand Order</u>. Thus it sheds no light on the question the Court resolved here.

SBC's conclusory assertions regarding the text, context, and meaning of the Act's definition of "exchange access" service and "toll service" fare no better. The statute does not provide, as SBC contends, that any call that travels between customers in different exchanges is an "exchange access service." Mot. at 8. A call will be classified as toll only if "there is made [for that call] a separate charge not included in contracts with subscribers for exchange service." 47 U.S.C. § 153(48). Neither the Act nor the FCC's rules suggest that it is improper to focus, as this Court did, on whether the <u>caller</u> incurs the "separate charge." As the Court noted, callers do not pay a separate toll charge to dial FX numbers; that is the very point of FX service. <u>Order</u> at 19. Like this Court, the Michigan state commission also has found that to be dispositive when determining, as the DPUC has ruled, that FX is not "exchange access." <u>See In re TDS Metrocom, Inc.</u>, 2001 Mich. PSC LEXIS 332, at *40 ("When an end-user dials a number that

12

belongs to an FX customer, there is no separate charge made. Therefore, by definition, FX is not a toll service....”). Another court in this district interpreted the rules in the same way, despite SNET's contention in that case that the called party (e.g., the FX subscriber) pays a charge to receive those calls. See Southern New England Tel. Co., 285 F. Supp. 2d at 262 n.4.[9] The key factor is that the calling party pays a charge for making an FX call to the same extent that it pays a charge to make any other local call.

SBC's contention that a call is exchange access if the called party pays a charge makes no sense. Subscribers pay to receive all calls, including local or “exchange” calls, as part of their contract for service. Whatever fees FX customers may pay carriers to obtain the FX number are also part of those subscription costs. Those are not the “separate charges” referenced in Section 153(48), but instead are charges “included in contracts with subscribers for exchange service.” SBC's analogy to 1-800 calls — which are governed by rules that the FCC has developed over the nearly forty years since 800-service was introduced — does not alter the soundness of this Court's, and the DPUC's, determination that FX is not an exchange access service. Those calls are the exception to the general rule that the calling party pays a separate charge for toll calls, and pays the regular local call charges for all other calls (as it does for FX traffic).

Finally, SBC's assertion that FX is an “exchange service” that is within the listed exclusions of Rule 51.701(b) fails for the same reasons. Calling FX an “exchange service” does not remove FX from the scope of the reciprocal compensation rules. Instead Rule 51.701 references exchange access, information access, and “exchange service[s] for such access.” 47

---

[9] That court recognized that FX calls “do not appear to be ‘interLATA toll’ calls because no separate charge is made to SNET's subscribers for this traffic,” but elected to “leave[] that determination to the DPUC if it chooses to address the matter.” Southern New England Tel. Co., 285 F. Supp. 2d at 262 n.4. On remand, the DPUC held that FX calls did not meet the statutory definition of toll traffic. See Paetec, 2003 Conn. PUC LEXIS 186, at *9-*10.

C.F.R. § 51.701(b)(1) (emphasis added). FX cannot fall within this exception because it does not

involve traffic that meets the definition of "exchange access." Thus even assuming FX were an

exchange service, it would be subject to reciprocal compensation.

## CONCLUSION

For the foregoing reasons, SBC's Motion to Amend or Alter the Judgment should be

denied.

Dated: March 7, 2005                            Respectfully submitted,


                                                MCI WORLDCOM COMMUNICATIONS, INC.
                                                and MCIMETRO ACCESS TRANSMISSION
                                                SERVICES LLC

                                                BY CUMMINGS & LOCKWOOD
                                                THEIR ATTORNEYS

                                                M. Juliet Bonazzoli
                                                Federal Bar No. 21394
                                                Robert Dolian
                                                Federal Bar No. 04278 Ct.
                                                CUMMINGS & LOCKWOOD
                                                Four Stamford Plaza
                                                P.O. Box 120
                                                Stamford, CT 06904-0120

                                                Michael B. DeSanctis
                                                Federal Bar No. ct 22712
                                                Robin M. Meriweather
                                                JENNER & BLOCK LLP
                                                601 Thirteenth Street, N.W.
                                                Washington, D.C. 20005

                                                *Counsel for Defendants/Cross-Claim Plaintiffs*

14

## CERTIFICATION OF SERVICE

This is to certify that a copy of the foregoing OPPOSITION TO SBC'S MOTION TO

ALTER OR AMEND THE JUDGMENT has been mailed postage prepaid this 7th day of March,

2005, to the following counsel of record:


Timothy P. Jensen, Esq.
Tyler, Cooper & Alcorn, LLP
205 Church Street
P.O. Box 1936
New Haven, CT 06510-1910

M.E. Garber
SBC SNET Legal Department
310 Orange Street, 8th Fl.
New Haven, CT 06510

Michael C. D'Agostino
Bingham McCutchen
One State St.
Hartford, CT 06103-3178

Robert L. Marconi, Esq.
Tatiana Eirmann, Esq.
Attorney General's Office
Department of Public Utility Control
10 Franklin Square
New Britain, CT 06051

Michael K. Kellogg, Esq.
David L. Schwarz, Esq.
Kellogg, Huber, Hansen, Todd, Evans & Figel, P.L.L.C.
1615 M Street, N.W. Suite 400
Washington, DC 20036

M. Juliet Bonazzoli