LEXSEE 2003 CONN PUC LEXIS 186

PETITION OF PAETEC COMMUNICATIONS, INC. FOR RESOLUTION OF
DISAGREEMENT WITH SOUTHERN NEW ENGLAND TELEPHONE COMPANY -
SECOND REOPENING

DOCKET NO. 01-08-19RE02

Connecticut Department of Public Utility Control

2003 Conn. PUC LEXIS 186

December 17, 2003

**PANEL:** [*1]   Commissioners: Jack R. Goldberg; John W. Betkoski, III; Donald W. Downes

**OPINION: DECISION**

**I. INTRODUCTION**

**A. SUMMARY**

This docket has been reopened for the limited purpose of addressing Section 3.2.1 of the interconnection agreement amendment approved by the Department of Public Utility Control (Department) in the Decision dated June 13, 2001, in Docket No. 01-01-16, Application of the Southern New England Telephone Company for Approval of Agreement for Network Interconnection and Resale with PaeTec Communications, Inc. - Amendment Reopening (Amendment). In this Decision, the Department looks at Amendment Section 3.2.1 (Section 3.2.1) in light of the May 1, 2002 Decision in Docket No. 01-08-19, Petition of PaeTec Communications, Inc. for Resolution of Disagreement with Southern New England Telephone Company (2002 Decision). The Department demonstrates how the Amendment defines a special category of traffic, Virtual Foreign Exchange (VFX) traffic, which is treated as local traffic for purposes of compensation; how it is included in the Compensable Local Traffic category, and how it is subject to reciprocal compensation.

**B. BACKGROUND OF THE PROCEEDING**

The Telco and [*2]   PaeTec Communications, Inc. (PaeTec), entered into two interconnection agreements and an amendment approved by the Department in: (1) the Decision dated September 22, 1999, in Docket No. 99-06-09, Application of The Southern New England Telephone Company and PaeTec Communications, Inc. for Approval of Network Interconnection and Resale Agreement (Agreement1); (2) the Decision dated April 18, 2001, in Docket No. 01-01-16, Application of the Southern New England Telephone Company for Approval of Agreement for Network Interconnection and Resale with PaeTec Communications, Inc. (Agreement); and (3) the June 13, 2001 Decision approving the Amendment in Docket No. 01-01-16. The Agreement is the successor agreement to Agreement1. The effective dates for the Amendment are January 1, 2001 through May 31, 2003.

PaeTec filed a Complaint and Petition with the Department on August 23, 2001, and an Emergency Petition for Relief on October 11, 2001. The Telco filed a Motion on September 26, 2001. The filings concerned disagreements in the following areas of the Telco and PaeTec (collectively, the Parties) Agreements and Amendment: classification of traffic for compensation purposes; withholding [*3]   of payments for disputed bills; setting off payments of undisputed items by one Party with payments of disputed items withheld by the other Party, and the rerating of invoices. The Department opened Docket No. 01-08-19 and issued the 2002 Decision on May 1, 2002. In the matter of the dispute regarding traffic classification for compensation purposes, the Department determined that the traffic in dispute met the

Parties' definition of VFX in Amendment Section 3.1 (Section 3.1) and qualified for treatment as local traffic for reciprocal compensation purposes, as specified in the Amendment. 2002 Decision, pp. 6 and 11.

On June 13, 2002, the Telco appealed the 2002 Decision to the United States District Court for the District of Connecticut (Court). On September 30, 2003, the Court issued a Ruling on Motions for Summary Judgment in Civil Action No. 3-02-CV-1022(JCH), Southern New England Telephone Company v. State of Connecticut, DPUC, et al., 2003 U.S. Dist. LEXIS 17473 (Ruling). The Court stated that it was inclined to reach the same conclusion as the Department, that the calls at issue are included in local traffic by the Parties' Amendment to their interconnection [*4] agreement and are subject to reciprocal compensation. However, the Court granted a stay of the proceedings to allow the parties to request the Department reopen the proceeding to consider the issue in light of Section 3.2.1 of the Parties' Amendment. Ruling, pp. 24 and 25.

On October 29, 2003, the Department issued its Decision to allow a second reopening of Docket No. 01-08-19. This was done in accordance with the suggestion of Court and in response to a motion of the Telco, dated October 20, 2003. The reopened docket has the limited purpose of specifically addressing Section 3.2.1 in light of the entirety of the 2002 Decision.

The Department granted the Telco's request that the Parties be allowed to file comments prior to the issuance of the Draft Decision (Motion No. 1) and the Parties filed Written Comments on November 19, 2003. The Parties filed Written Exceptions to the Draft Decision on December 1, 2003, and Oral Arguments were held on December 8, 2003.

## C. PARTIES

The Department recognized as parties to this proceeding: the Southern New England Telephone Company, 310 Orange Street, New Haven, Connecticut 06510; PaeTec Communications, Inc., One PaeTec Plaza, 600 Willowbrook [*5] Office Park, Fairport, New York 14450; Verizon New York, Inc., 1095 Avenue of the Americas, Room 3729, New York, New York 10036; and the Office of Consumer Counsel, Ten Franklin Square, New Britain, Connecticut 06051.

## II. POSITIONS OF THE PARTIES

The Telco argues that the January 30, 2002 Decision in Docket No. 01-01-29, DPUC Investigation of the Payment of Mutual Compensation for Local Calls Carried Over Foreign Exchange Service Facilities, necessitates that the Department find in the instant docket, that interLATA FX traffic is an interLATA toll service. Telco Written Comments, pp. 1, 2, 6, 7; Telco Written Exceptions, pp. 2, 3; Tr. 12/08/03, pp. 6,7.

PaeTec agreed with the Department's determination in the 2002 Decision that its VFX traffic is subject to reciprocal compensation. PaeTec asserts that there is no provision in Section 3.2, or anywhere else in the Amendment limiting the VFX traffic to intraLATA traffic. PaeTec also notes that the VFX traffic does not meet the controlling definition of Telephone Toll Service from the Telecommunications Act of 1996 (Act). PaeTec Written Comments, pp. 8, 10, 11.

## III. DEPARTMENT ANALYSIS

First, in regard to the Telco's [*6] argument above concerning the Department Decision in Docket 01-01-29, the Department views this argument as evidencing a misunderstanding of the purpose of Docket No. 01-08-19 and the 2002 Decision. In the 2002 Decision, the Department settled an interconnection agreement dispute between the Parties. The 2002 Decision is based on what the Parties agreed to in the Agreement and Amendment. Unlike the Decision in Docket No. 01-01-29, the 2002 Decision is not a generic or general decision; it is based on and specific to the Parties' Agreement and Amendment.

Reviewing the Amendment, Section 3.1 classifies traffic that fits the following definition as VFX traffic:

> If PaeTec Communications, Inc. designates different rating and routing points such that traffic that originates in one rate center terminates to a routing point designated by PaeTec Communications, Inc. in a rate center that is not local to the calling party, such traffic ("Virtual Foreign Exchange" traffic) shall be rated in reference to the rate centers associated with the NXX prefixes of the calling and called parties' numbers, but treated as Local traffic for purposes of compensation.

In its 2002 Decision, the Department [*7] determined that the PaeTec traffic at issue fits the VFX definition contained in Section 3.1, and noted that, as required by the definition: (1) the Connecticut caller dials a number with an

NXX that is local to the caller and the call terminates in a rate center that is outside of the caller's local calling area, and (2) PaeTec has designated different rating and routing points such that traffic that originates in one rate center terminates to a routing point designated by PaeTec in a rate center that is not local to the calling party.

Section 3.2 of the Amendment (Section 3.2) states:

Local, Mandatory Local and Optional EAS traffic eligible for reciprocal compensation will be combined with traffic terminated to Internet Service Providers (ISPs) to determine the total Compensable Local Traffic and the balance of traffic between the Parties.

Section 3.2.1 of the Amendment states:

In determining the total Compensable Local Traffic, InterLATA toll and IXC-carried intraLATA toll are excluded, and will be subject to Meet Point Billing as outlined in the interconnection agreement and applicable tariffs.

In its 2002 Decision, the Department did not specifically address Section [*8] 3.2.1 because, pursuant to Section 3.1, PaeTec's traffic met the specified conditions of the special VFX category. The VFX traffic meeting these conditions was not classified as interLATA toll or intraLATA toll and neither of these categories was used in the Parties' definition of VFX. Rather, this traffic was defined a separate category of VFX and included in the local traffic category for purposes of compensation. Section 3.2 includes local traffic, and thus, VFX traffic, as one of the elements of total Compensable Local Traffic.

Section 3.2.1 excludes interLATA toll and interexchange carrier (IXC) carried intraLATA toll from total Compensable Local Traffic; it does not exclude VFX traffic. The Telco argues that PaeTec's VFX traffic is interLATA toll. Telco Written Comments, pp. 5 and 6. However, the Parties have defined VFX traffic as a separate category; it has not been defined as interLATA toll or any type of toll service and the word "toll" has not been used in the definition. In reviewing the Amendment, the two terms, VFX and interLATA toll are not used to define the same traffic; nor has interLATA toll traffic been defined in the Amendment and/or Agreement as meeting the [*9] necessary specifications of VFX traffic in Section 3.1. Lastly, the Parties have not defined interLATA toll traffic as local for purposes of compensation; however, they have included VFX in the local category for purposes of compensation in Sections 3.1 and 3.2.

In the Agreement, General Terms and Conditions, Section 1.1.130, the Parties agree to use the same definition for Telephone Toll Service as the Act. The Act defines Telephone Toll Service as, "telephone service between stations in different exchange areas for which there is made a separate charge not included in contracts with subscribers for exchange service." 47 U.S.C. 153(48). This definition is cited by the Court in its Ruling. The Court states that the VFX calls do not appear to be interLATA toll calls because there is no separate charge for the calls to the Telco's subscribers, although the Court indicated that it would leave that determination to the Department should it choose to address the matter. Ruling, p. 24.

In the Amendment, VFX calls, unlike toll calls, are treated as local to the subscriber and there is no separate charge. In addition, unlike interLATA toll calls, VFX calls [*10] are not a toll service as defined in the Act and the Agreement. Based upon Department analysis, it is clear that the Parties have differentiated VFX traffic and interLATA toll traffic, treating them differently for purposes of compensation, and the Amendment does not exclude VFX calls from total Compensable Local Traffic.

## IV. CONCLUSION

1. Section 3.1 defines a classification of traffic called VFX traffic. The traffic that meets this definition is treated as local for purposes of compensation.

2. Section 3.2 includes Local traffic in total Compensable Local Traffic. VFX traffic, having been included in the local category for purposes of compensation by Section 3.1, is included in total Compensable Local Traffic.

3. Section 3.2.1 does not exclude VFX traffic from total Compensable Local Traffic because VFX is not a toll service and does not fit into the excluded categories of interLATA toll and interexchange carrier intraLATA toll.

4. VFX traffic is Compensable Local Traffic and subject to reciprocal compensation.

This Decision is adopted by the following Commissioners:

    Jack R. Goldberg

    John W. Betkoski, III

    Donald W. Downes