UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| The Southern New England Telephone Company, <br><br> Plaintiff, <br> v. <br><br> MCI WorldCom Communications, Inc., et al., <br><br> Defendants. | Civil Action No. 3:02CV0274 (SRU) <br><br> April 14, 2005 |

## NOTICE OF APPEAL

Pursuant to F.R.A.P. 4(a), notice is hereby given that The Southern New England Telephone Company d/b/a SBC Connecticut, plaintiff in the above-captioned matter, appeals to the United States Court of Appeals for the Second Circuit from this Court's decision in *SNET v. MCI WorldCom*, 353 F. Supp. 2d 287 (D. Conn. 2005) with Judgment entered on February 4, 2005, as well as from this Court's Ruling on Motion to Alter or Amend the Judgment, No. 3:02CV0274 (SRU) (D. Conn. Mar. 16, 2005), entered on the docket March 17, 2005.

                                                            Respectfully submitted,
                                                            Plaintiff,
                                                            The Southern New England
                                                           Telephone Company

                                                           _____

| | |
|---|---|
| Geoffrey M. Klineberg (ct 22893) <br> David L. Schwarz (ct 23224) <br> Kellogg, Huber, Hansen, <br>    Todd, Evans & Figel, P.L.L.C. <br> 1615 M Street, N.W., Suite 400 <br> Washington, D.C. 20036-3209 <br> (202) 326-7900 (Telephone) <br> (202) 326-7999 (Fax) <br> gklineberg@khhte.com <br> dschwarz@khhte.com | Timothy P. Jensen (ct 18888) <br> Tyler Cooper & Alcorn, LLP <br> 205 Church Street <br> P.O. Box 1936 <br> New Haven, CT  06509-0906 <br> (203) 784-8200 (Telephone) <br> (203) 789-2133 (Facsimile) <br> jensen@tylercooper.com |

UNITED STATES DISTRICT COURT **FILED**

DISTRICT OF CONNECTICUT

2005 FEB -4 P 3: 52

U.S. DISTRICT COURT
BRIDGEPORT, CONN

THE SOUTHERN NEW ENGLAND
TELEPHONE COMPANY

v.                                                                    3:02CV274 (SRU)

MCI WORLDCOM COMMUNICATIONS, INC.,
MCI METRO ACCESS TRANSMISSION
SERVICES, INC., BROOKS FIBER
COMMUNICATIONS OF CONNECTICUT,
INC., THE CONNECTICUT DEPARTMENT OF
PUBLIC UTILITY CONTROL, the Honorable
DONALD W. DOWNES, in his capacity as a
Commissioner of the Connecticut Department of
Public Utility Control, the Honorable LINDA KELLY,
in her capacity as a Commissioner of the Connecticut
Department of Public utility Control, the Honorable
GLENN ARTHUR, in his capacity as a Commissioner
of the Connecticut Department of Public Utility Control,
the Honorable JOHN W. BETKOSKI, III, in his capacity
as a Commissioner of the Connecticut Department
of Public Utility Control, and the Honorable JACK R.
GOLDBERG, in his capacity as a Commissioner of
the Connecticut Department of Public Utility Control

## JUDGMENT

This matter came on before the Honorable Stefan R. Underhill, United States District Judge, as a result of the plaintiff's and defendants' MCI Worldcom Communications, Inc., MCI Metro Access Transmission Services, Inc., Brooks Fiber Communications of Connecticut, Inc., motions for summary judgment.

The Court heard oral argument on March 4, 2004, and has reviewed all of the papers filed in conjunction with the motions. On January 31, 2005, a Decision and Order was filed granting the motions for Summary Judgment, vacating the Department of Public Utility Control's ruling on

all disputed issues and remanding the case to the Department of Public Utility Control for further proceedings consistent with the decision.

It is therefore ORDERED and ADJUDGED that the Department of Public Utility Control ruling on all disputed issues is vacated and the case is remanded for further proceedings consistent with the decision entered on January 31, 2005.

Dated at Bridgeport, Connecticut, this 4th day of February 2005.

KEVIN F. ROWE, Clerk

By *(signature)*
Deputy Clerk

Entered on Docket _____

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| THE SOUTHERN NEW ENGLAND<br>TELEPHONE COMPANY,<br>    Plaintiff,<br><br>v.<br><br>MCI WORLDCOM<br>COMMUNICATIONS, INC., ET AL.,<br>    Defendants. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | CIVIL ACTION NO.<br>3:02cv274 (SRU) |

## RULING ON MOTION TO ALTER OR AMEND THE JUDGMENT

The Southern New England Telephone Company, now doing business as SBC Connecticut, ("SBC") has moved to amend or alter the judgment entered in this case on February 4, 2005. SBC believes the decision that led to that judgment, *SNET v. MCI Worldcom*, 353 F. Supp. 2d 287 (D. Conn. 2005) ("the Decision"), erroneously held: (1) that the FCC's *ISP Remand Order*,[1] 16 F.C.C.R. 9151 (Apr. 27, 2001), applies to all ISP-bound traffic, and (2) that Foreign Exchange ("FX") traffic is subject to reciprocal compensation under 47 U.S.C. § 251(b)(5). Regarding the first point, I am not persuaded that the Decision was in error. Regarding the second point, the Decision did not decide the question whether FX traffic is subject to reciprocal compensation but left it for the Connecticut Department of Public Utility Control ("DPUC") to answer on remand. Accordingly, SBC's motion is denied.

**I.     ISP Remand Order**

The following paragraph from the Decision pertains to SBC's first issue.

> Finally, it is worth emphasizing that, unless and until the FCC changes its

---

[1] The full name is *Implementation of the Local Competition Provisions in the Telecommunications Act of 1996, Intercarrier Compensation for ISP-Bound Traffic*, Order on Remand and Report and Order.

> rules, ISP-bound traffic is *never* subject to section 251(b)(5) reciprocal compensation, regardless of whether or not it involves the use of FX service. The *ISP Remand Order* covers *all* ISP-bound traffic, without exception. *See Global NAPS, Inc.*, 327 F. Supp. 2d at 300 ("The FCC did not distinguish traffic between an ISP and its customer in different local calling areas from traffic between an ISP and its customer in the same local calling area."). Consequently, because the effective date of the *ISP Remand Order* predates the Final Decision, any decision the DPUC makes on remand regarding FX traffic will have no direct effect on ISP-bound traffic.

353 F. Supp. 2d at 299. SBC argues that the *ISP Remand Order* does not cover all ISP-bound traffic, but only covers "local" ISP-bound traffic. Accordingly, SBC asks me to remove the second sentence just quoted and to change the final sentence to read ". . . any decision the DPUC makes on remand regarding FX traffic *may* have no direct effect on ISP-bound traffic." Presumably SBC intends the latter alteration to indicate that the DPUC may decide that FX traffic is not "local," and therefore ISP-bound FX traffic is not "local" ISP-bound traffic covered by the *ISP Remand Order*.

In support of its contention that the FCC only intended the *ISP Remand Order* to cover "local" ISP-bound traffic, SBC makes three arguments. First, SBC argues that there is language in the FCC's order and the D.C. Circuit's decision reviewing that order that refers to ISPs in the same "local calling area" as the ISP subscriber. Second, SBC argues that the context of the *ISP Remand Order* makes clear that the FCC was discussing only local ISP-bound traffic. Third, SBC argues that interpreting the order as applying to all ISP-bound traffic will have unintended consequences, including the creation of new arbitrage opportunities.[2]

---

[2] SBC also points to an unpublished decision in the *Global NAPS* case, a case cited in the Decision, in which the District of Vermont amended its conclusion that the *ISP Remand Order* covered all ISP-bound traffic. That Court did not decide the issue one way or another; it merely declined to address the issue. I do not believe the posture of this case affords me that opportunity.

Before addressing SBC's arguments, I start by noting that, in the *ISP Remand Order,* the FCC did not use the term "local ISP-bound" traffic and did not impose any explicit restriction on the term "ISP-bound traffic." Moreover, as I explained in the Decision, the FCC expressly disavowed the use of the term "local," making it difficult to believe the Commission nevertheless intended that term to be implicitly read back into its ruling. *ISP Remand Order* at 34. ("We also refrain from generically describing traffic as "local" traffic because the term "local," not being a statutorily defined category, is particularly susceptible to varying meaning and, significantly, is not a term used in section 251(b)(5) or section 251(g)."). Put simply, the language of the *ISP Remand Order* is unambiguous – the FCC concluded that section 201 gave it jurisdiction over all ISP-bound traffic, and it proceeded to set the intercarrier compensation rates for such traffic.

Bearing in mind that SBC bears a heavy burden in attempting to argue against the plain language of the FCC's order, I now turn to its arguments.

First, SBC argues that in a number of places the language of the *ISP Remand Order* makes clear that the FCC was discussing local ISP-bound traffic. SBC points to the FCC's statement that "the question arose whether reciprocal compensation obligations apply to the delivery of calls from one LEC's end-user customer to an ISP in the *same local calling area,*" id. ¶ 13 (emphasis supplied), and to the D.C. Circuit's statement that the FCC held that it could "'carve out' from § 251(b)(5) calls made to internet service providers ('ISPs') located *within the caller's local calling area,*" *Worldcom v. FCC*, 288 F.3d 429, 430 (D.C. Cir. 2002) (emphasis supplied).

I agree that these statements indicate the FCC began by addressing the question whether ISP-bound traffic that would typically be subject to reciprocal compensation – which at the time

would have consisted of "local" ISP-bound traffic – was nevertheless exempt. In other words, because at the time only "local" traffic was subject to reciprocal compensation, the question before the FCC was whether "local" ISP-bound traffic was exempt from reciprocal compensation. Other forms of ISP-bound traffic were already exempt because they were not "local."

What these statements, taken by themselves, do not reveal is how the FCC proceeded to answer that question in the *ISP Remand Order*. In answering the question, the FCC: (a) disclaimed the use of the term "local," (b) held that all traffic was subject to reciprocal compensation unless exempted, (c) held that all ISP-bound traffic was exempted because it is "information access," (d) held that all ISP-bound traffic was subject to the FCC's jurisdiction under section 201, and (e) proceeded to set the compensation rates for all ISP-bound traffic. In short, though the FCC started with the question whether "local" ISP-bound traffic was subject to reciprocal compensation, it answered that question in the negative on the basis of its conclusion that all ISP-bound traffic was in a class by itself.

Second, SBC argues that the context of the *ISP Remand Order* makes clear that the FCC did not intend the order to cover ISP-bound traffic that was already subject to a compensation regime other than reciprocal compensation, such as the access charge regime. In support of this position, SBC quotes the FCC's observation that "Congress was concerned about the effects of potential disruption to the interstate access charge system . . . ." *ISP Remand Order* ¶ 37 n.66. SBC believes this quote indicates that the FCC did not intend to work any change in how the interstate access charge system would apply to ISP-bound traffic.

In the first place, this quotation only indicates the FCC's view that Congress did not want

-4-

to disturb the FCC's regulation of access charges. It does not support the conclusion that the FCC did not want its own regulations to affect calls that are subject to the access charge regime. Even if it did support such a conclusion, it is not clear that a general indication of an agency's intent could override the clear language of the agency's order.

      Moreover, there is actually some indication that, at the time it issued the *ISP Remand Order*, the FCC was interested in changing all intercarrier compensation regimes, including the access charge regime. On the same day that the *ISP Remand Order* was issued, the FCC also issued a Notice of Proposed Rulemaking in which it sought to move all forms of intercarrier compensation away from so-called "Calling Party Network Pays" compensation, of which both reciprocal compensation and access charges are examples, towards some method of recovering costs directly from end users. *In the Matter of Developing a Unified Intercarrier Compensation Regime*, Notice of Proposed Rulemaking, 16 F.C.C.R. 9610 (Apr. 19, 2001); *see also In the Matter of Developing a Unified Intercarrier Compensation Regime*, Further Notice of Proposed Rulemaking, FCC 05-33 (Mar. 3, 2005). Accordingly, it is at least arguable that the FCC intended to use the *ISP Remand Order* as a first step in its general plan to unify all intercarrier compensation, including access charges. *See ISP Remand Order* ¶ 83 ("The interim compensation regime, as a whole, begins a transition toward what we have tentatively concluded, in the companion *NPRM*, to be a more rational cost recovery mechanism under which LECs recover more of their costs from their own customers.").

      Finally, SBC argues that, if the *ISP Remand Order* does cover all ISP-bound traffic, it would have the effect of eliminating the payment of access charges for ISP-bound traffic, resulting in increased opportunity for regulatory arbitrage, despite the FCC's intention that the

-5-

order should curtail those opportunities. Assuming, without deciding, that SBC is correct that application of the *ISP Remand Order* to all ISP-bound traffic will result in a change in the access charges applicable to such calls[3] and that such a change will give rise to arbitrage opportunity, that is not a sufficient reason to amend the Decision. This court must apply the clear language of an FCC order, even if the result of that application might be harm to certain elements of the telecommunication industry.[4]

## II.   FX Traffic

The following paragraph from the Decision pertains to SBC's second issue.

> No one argues that FX traffic is an information access service. It is also difficult to see how FX traffic could be exchange access. FX service is not a toll service; FX calls are billed exactly the same as local calls. Moreover, the DPUC has specifically declined to subject FX calls to access charges. Consequently, because it appears that FX traffic is not information access or exchange access (or exchange services for such access), it is not exempt from the reciprocal compensation requirement of section 251(b)(5), and the DPUC's determination to the contrary is in conflict with federal law.

353 F. Supp. 2d at 298.

SBC reads this language as precluding the DPUC from revisiting the question of reciprocal compensation for FX traffic. That, SBC contends, would be a mistake. SBC argues it

---

[3] I confess that I am not sure why SBC believes the *ISP Remand Order* would relieve ISPs of the obligation to pay any access charges. SBC Brief at 6 n.6. The order imposes a cap on intercarrier compensation; it does not eliminate compensation.

[4] I acknowledge that the FCC focused its analysis in the *ISP Remand Order* specifically on the arbitrage opportunities surrounding ISP-bound traffic that was previously subject to reciprocal compensation, and, accordingly, reasonable people could take the position that the FCC simply overlooked the effect its order would have on other types of ISP-bound traffic (although, as discussed above, there is evidence supporting the contrary position as well). Nevertheless, the FCC's failure to consider all the ramifications of its order – if indeed there was such a failure – is not something I can rectify.

should have the opportunity to demonstrate on remand that FX traffic is "exchange access," as defined by 47 U.S.C. § 153, because the *called* party is billed "a separate charge not included in contracts with subscribers for exchange service." 47 U.S.C. § 153(48).

I agree with SBC that the DPUC should be free to consider that argument on remand.[5] It was not my intention to foreclose such a possibility. I held that, because the DPUC had not offered any explanation for why FX traffic fell into one of the categories excluded from reciprocal compensation and because the record contained no indication that FX traffic would fall into one of those categories, the DPUC's decision to exempt such traffic from reciprocal compensation was in conflict with federal law. In other words, I held that the DPUC's decision to exempt FX traffic violated federal law, not that FX traffic is, as a matter of federal law, always subject to reciprocal compensation.

SBC's motion to amend or alter the judgment (doc. # 76) is DENIED.

It is so ordered.

Dated at Bridgeport, Connecticut, this 16th day of March 2005.

/s/ Stefan R. Underhill
Stefan R. Underhill
United States District Judge

---

[5] This argument appears to involve factual, as well as legal, questions, making it an appropriate subject for the DPUC to address on remand, rather than for this court to address in the current proceeding. There is a factual question regarding how subscribers are billed for FX service (there does not appear to be a dispute that the called party pays *something* for FX service), and there is a legal question whether the manner of that billing constitutes a charge "included in contracts with subscribers for exchange service." 47 U.S.C. § 153(48).

2

**CERTIFICATE OF SERVICE**

This is to certify that a copy of the foregoing was faxed and mailed, first class mail, postage prepaid, to Robert S. Golden, Jr. and Tatiana D. Eirmann, Assistants Attorney General, 10 Franklin Square, New Britain, Connecticut 06051; Robert J. Sickinger, Esq., Mena J. Bonazzoli, Cummings & Lockwood, LLP, Four Stamford Plaza, P. O. Box 120, Stamford, Connecticut 06904-0120; and to Michael B. DeSanctis, Jenner & Block, LLC, 601 13th Street N.W., Washington, D.C. 20005, on this 14th day of April, 2005.

_____
Timothy P. Jensen