# EXHIBIT D

BRIEF FOR AMICUS CURIAE FEDERAL COMMUNICATIONS COMMISSION

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

———————

No. 05-2657

———————

GLOBAL NAPS, INC.,

Plaintiff-Appellant,

v.

VERIZON NEW ENGLAND, INC., ET AL.,

Defendants-Appellees.

———————

ON APPEAL FROM A JUDGMENT OF THE DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

———————

SAMUEL L. FEDER
GENERAL COUNSEL

DANIEL M. ARMSTRONG
ASSOCIATE GENERAL COUNSEL

JOEL MARCUS (BAR NO. 110379)
COUNSEL

FEDERAL COMMUNICATIONS COMMISSION
WASHINGTON, D.C. 20554
(202) 418-1740

# TABLE OF CONTENTS

**Page**

STATEMENT OF INTEREST AND QUESTIONS PRESENTED ................................................1

BACKGROUND ...................................................................................................................2

    I.    Reciprocal Compensation and Access Charges. ......................................................2

    II.   Compensation For ISP Access. ..............................................................................3

    III.  The Present Dispute. ..............................................................................................8

DISCUSSION .....................................................................................................................10

## TABLE OF AUTHORITIES

**Page**

**Cases**

*AT&T Corp. v. Iowa Utilities Board*, 525 U.S. 366 (1999) ........................................ 11

*Bell Atlantic Telephone Companies v. FCC*, 206 F.3d 1 (D.C. Cir. 2000) ........................................................................................................ 5

*Dubois v. U.S. Dept. of Agriculture*, 102 F.3d 1273 (1st Cir. 1996), *cert. denied*, 521 U.S. 1119 (1997) ....................................................... 13

*Western Union Corp. v. FCC*, 856 F.3d 315 (D.C. Cir. 1988) ......................................... 13

*WorldCom Inc. v. FCC*, 288 F.3d 429 (D.C. Cir. 2002) ...................................................... 8

**Administrative Decisions**

*Access Charge Reform*, 12 FCC Rcd 15982 (1997) ........................................................ 3

Developing a Unified Intercarrier Compensation Regime, *Further Notice of Proposed Rulemaking*, 20 FCC Rcd 4685 (2005) ..................................... 8

Developing a Unified Intercarrier Compensation Regime, *Notice of Proposed Rulemaking*, 16 FCC Rcd 9610 (2001) ...................................... 8

*ISP Declaratory Ruling*, 14 FCC Rcd 3689 (1999) ............................... 4, 5, 6, 7, 11, 12

*ISP Remand Order*, 16 FCC Rcd 9151 (2001) ......................... 2, 6, 7, 8, 9, 10, 11, 12, 13

*Local Competition Order*, 11 FCC Rcd 15499 (1996) ........................................... 2, 3, 12

**Statutes and Regulations**

47 C.F.R. § 51.701 .................................................................................................... 6

47 C.F.R. § 51.701(b)(1) (2000) ............................................................................. 12

47 C.F.R. § 51.701(b)(1) (2004) ............................................................................... 6

47 C.F.R. § 57.701 (2000) ......................................................................................... 2

47 U.S.C. § 151 .......................................................................................................... 1

47 U.S.C. § 201 .......................................................................................................... 7

47 U.S.C. § 251(b)(5) .......................................................................................... 1, 2

47 U.S.C. § 251(g) ............................................................................................... 6, 8

47 U.S.C. § 252(b) .................................................................................................... 9

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

No. 05-2657

GLOBAL NAPS, INC.,

Plaintiff-Appellant,

v.

VERIZON NEW ENGLAND, INC., ET AL.,

Defendants-Appellees.

ON APPEAL FROM A JUDGMENT OF THE DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

BRIEF FOR AMICUS CURIAE FEDERAL COMMUNICATIONS COMMISSION

## STATEMENT OF INTEREST AND QUESTIONS PRESENTED

Amicus curiae Federal Communications Commission (FCC) is the federal regulatory agency charged by Congress with "regulating interstate and foreign commerce in communication by wire and radio." 47 U.S.C. § 151. In particular, the FCC regulates many aspects of the compensation scheme among telecommunications carriers that collaborate to complete a telephone call. *See, e.g.*, 47 U.S.C. § 251(b)(5). This case involves the Court's interpretation of an FCC order pertaining to compensation for telephone calls placed to internet service providers (ISPs). By order entered January 4, 2006, the Court requested that the FCC file a brief addressing the following questions:

1. Whether, in the *ISP Remand Order*, 16 FCC Rcd 9151 (2001), the Commission intended to preempt states from regulating intercarrier compensation for *all* calls placed to internet service providers, or whether it intended to preempt only with respect to calls bound for internet providers in the same local calling area?

2. Whether, if the FCC did not intend to preempt state regulation of all calls, a state regulator's decision to impose access charges on certain calls violates the Telecommunications Act of 1996?

3. What is the standard of review for a reviewing court assessing a state commission's interpretation of an FCC order?

## BACKGROUND

### I.    Reciprocal Compensation and Access Charges.

This case concerns the compensation paid by or to the carriers of telephone calls when more than one carrier collaborates to complete a call. Congress has placed on all local exchange carriers "[t]he duty to establish reciprocal compensation arrangements for the transport and termination of telecommunications." 47 U.S.C. § 251(b)(5). In implementing that provision, the FCC determined that the statutory obligation "appl[ies] only to traffic that originates and terminates within a local area," as defined by state regulatory authorities. *Local Competition Order*, 11 FCC Rcd 15499, 16013 ¶1034 (1996) (subsequent history omitted).[1] *See* 47 C.F.R. § 57.701 (2000) (requiring reciprocal

---

[1] Although the *Local Competition Order* was the subject of various appeals that ultimately resulted in its partial reversal, no party challenged that aspect of the Order.

compensation for "[t]elecommunications traffic ... that originates and terminates within a local service area established by the state commission"). Thus, when a customer of one carrier places a local, non-toll call to the customer of a competing carrier, the originating carrier must compensate the terminating carrier for completing the call.

In the *Local Competition Order*, the Commission also decided that "the reciprocal compensation provisions of section 251(b)(5) do not apply to the transport or termination of interstate or intrastate interexchange traffic." *Local Competition Order* at 16013 ¶1034. Interexchange traffic is traffic that terminates beyond a local calling area, and it is governed by a different compensation regime. When a customer places a toll or long distance call, the long distance carrier, known as an interexchange carrier or IXC, pays "access charges" to both the originating and terminating local carriers. *See Access Charge Reform*, 12 FCC Rcd 15982, 15990-15992 (1997); *Local Competition Order* at 16013 ¶1034. The Commission decided that the states should "determine whether intrastate transport and termination of traffic between competing LECs, where a portion of their local services areas are not the same, should be governed by section 251(b)(5)'s reciprocal compensation obligations or whether intrastate access charges should apply to the portions of their local service areas that are different." *Local Competition Order* ¶1035.

## II.    Compensation For ISP Access.

In several recent orders, the FCC has addressed the intercarrier compensation regime that applies to calls placed to dial-up internet service

providers (ISPs). Dial-up access involves a customer who seeks to access the Internet via telephone. To do so, the customer dials a telephone number, usually but not always a local number, and is connected with the ISP's equipment. From there, the ISP connects the call to computers throughout the world. *See ISP Declaratory Ruling*, 14 FCC Rcd 3689, 3691 ¶4 (1999). In many cases, such as this one, the ISP is served by one telephone company, typically a competitive local exchange carrier (CLEC), and the dialing-in customer by a different company, typically the incumbent local exchange carrier (ILEC).

Disputes arose between ILECs and CLECs about the intercarrier payment mechanism that governs such calls. The CLECs argued that calls to ISPs are local calls, subject to reciprocal compensation payments, because the calls terminate at the ISP's equipment. The ILECs argued that such calls are not subject to the reciprocal compensation regime because they terminate only at the far-flung computer servers that constitute the world-wide-web.

The FCC first addressed the matter in the *ISP Declaratory Ruling*, 14 FCC Rcd 3689. The Commission noted that in the "typical arrangement, an ISP customer dials a seven-digit number to reach the ISP server in the same local calling area." *Id.* at 3691 ¶4. Even though the initial part of the call is local, however, the Commission found that the call, looked at "end-to-end," does not "terminate at the ISP's local server ... but continue[s] to the ultimate destination ... at a[n] Internet website that is often located in another state." *Id.* at 3697 ¶12. ISP-bound calls were not considered local calls subject to reciprocal compensation

under state regulatory auspices, but interstate calls subject to the regulatory authority of the FCC.

The Commission nevertheless acknowledged that at the time it "ha[d] no rule governing inter-carrier compensation for ISP-bound traffic." *ISP Declaratory Ruling* at 3703 ¶22. In the absence of such a rule, the Commission found "no reason to interfere with state commission findings as to whether reciprocal compensation provisions of interconnection agreements apply to ISP-bound traffic." *Id.* at 3703 ¶21. In other words, the FCC left the existing state regulatory mechanisms in place for the time being. At the same time, the Commission began a rulemaking proceeding to formulate a federal rule that would govern ISP-bound calls. *Id.* at 3707-3710.

The D.C. Circuit vacated the *ISP Declaratory Ruling* in *Bell Atlantic Telephone Companies v. FCC*, 206 F.3d 1 (D.C. Cir. 2000). It did not question the agency's jurisdictional analysis, *id.* at 7, but found that inquiry not to be "controlling" on the question of whether a call is within the scope of § 251(b)(5), *id.* at 8. The Court also found that the FCC's analysis seemed inconsistent with the Commission's earlier ruling that ISPs were end users that could subscribe to telephone service pursuant to rates established for local service. *Id.* at 7-8. The Court also held that the Commission had failed to make its rules comport with the statute's distinction between "telephone exchange service" and "exchange access." *Id.* at 8-9.

On remand, the Commission issued the *ISP Remand Order*, 16 FCC Rcd 9151 (2001), the interpretation of which is before the Court in this case. The

Commission described the issue it had confronted in the *ISP Declaratory Ruling* as "whether reciprocal compensation obligations apply to the delivery of calls from one LEC's end-user customer to an ISP in the same local calling area that is served by a competing LEC." *ISP Remand Order*, 16 FCC Rcd at 9159 ¶13.  The Commission determined that ISP-bound calls are not subject to reciprocal compensation payments pursuant to § 251(b)(5).  Rather, the Commission found that ISP-bound calls are "information access" calls within the meaning of 47 U.S.C. § 251(g), which states that LECs shall provide information access "with the same equal access and non-discriminatory interconnection restrictions and obligations (including receipt of compensation) that apply to such carrier on the date immediate preceding the date of enactment of" the statute.  *Ibid.*  The Commission interpreted § 251(g) as a "carve-out" of the reciprocal compensation requirement of § 251(b)(5) for calls placed to ISPs.  *Id.* at 9166-9167 ¶34.[2]  The Commission found that § 251(g)'s exception to the reciprocal compensation requirement was intended to apply to "all access traffic that [is] routed by a LEC" to an ISP.  *Id.* at 9171 ¶44.

The Commission next reiterated its earlier conclusion that calls to ISPs are interstate calls over which the Commission has regulatory authority.  *ISP Remand*

---

[2] The Commission also changed 47 C.F.R. § 51.701 to reflect the terminology used in § 251(g) of the statute.  Instead of referring to "local" calls, a term not used in the statute, the regulation now exempts from the reciprocal compensation requirement "telecommunications traffic that is interstate or intrastate exchange access, information access, or exchange services for such access." 47 C.F.R. § 51.701(b)(1) (2004).  The Commission made the change because use of the term "local" "created unnecessary ambiguity ... because the statute does not define the term 'local call,' [which] ... could be interpreted as meaning either traffic subject to local rates or traffic that is jurisdictionally intrastate." *ISP Remand Order* at 9172 ¶45.

*Order* at 9175 ¶52. The Commission analyzed the matter once again under an end-to-end analysis and found that ISP-bound calls are predominantly interstate. *Id.* at 9178 ¶58. As such, under the authority set forth in 47 U.S.C. § 201, the Commission set about developing a federal rule for compensation.

In developing a federal compensation rule, the Commission was particularly concerned about problems that had arisen with reciprocal compensation payments that had been ordered by State utility commissions under the *ISP Declaratory Ruling*. The Commission found that ISP dial-up access had distorted the market and "created the opportunity to serve customers with large volumes of exclusively *incoming* traffic." *ISP Remand Order* at 9182-9183 ¶69 (emphasis in original). The record showed that CLECs terminated 18 times more calls than they originated, leading to their receipt of net reciprocal compensation payments amounting to nearly $2 billion annually at the time of the Order. *Id.* at 9183 ¶70. The Commission thus found that, due to this type of regulatory arbitrage, reciprocal compensation had "undermine[d] the operation of competitive markets." *Id.* at 9183 ¶71.

The Commission expressed the view that a "bill and keep" regime under which each carrier collected its costs from its customer and not another carrier would be a viable compensation approach to ISP-bound traffic. *ISP Remand Order* ¶74. The Commission did not, however, employ a "flash cut" – *i.e.*, an immediate transition – to such a regime because the absence of a transition period would "upset the legitimate business expectations of carriers and their customers." *Id.* at 9186 ¶77. The Commission instead instituted an interim compensation

mechanism that placed a declining cap on the rate paid for termination of ISP-bound calls and limited the volume of calls eligible for compensation. *ISP Remand Order* at 9187 ¶78, 9191 ¶86. "This interim regime satisfies the twin goals of compensating LECs for the costs of delivering ISP-bound traffic while limiting regulatory arbitrage." *Id.* at 9189 ¶83.

On review, the D.C. Circuit reversed and remanded, but did not vacate, the *ISP Remand Order. WorldCom Inc. v. FCC*, 288 F.3d 429 (D.C. Cir. 2002). The Court held that the Commission's "carve-out" analysis was not consistent with the language of § 251(g) and would allow the Commission to "override virtually any provision of the 1996 Act so long as the rule it adopted were in some way … linked to LECs' pre-Act obligations." *Id.* at 433. In the meantime, the Commission began a rulemaking proceeding (which is still pending) to examine all aspects of intercarrier compensation, including compensation for ISP-bound calls. *See* Developing a Unified Intercarrier Compensation Regime, *Notice of Proposed Rulemaking*, 16 FCC Rcd 9610 (2001); Developing a Unified Intercarrier Compensation Regime, *Further Notice of Proposed Rulemaking*, 20 FCC Rcd 4685 (2005).

### III.   The Present Dispute.

The dispute before the Court involves a variation on the typical ISP dial-up access scenario. The calls at issue are not delivered to an ISP that is located in the caller's local calling area. Instead, the dialing-in customer, served by Verizon, an ILEC, is located in one exchange and the equipment of the ISP, served by Global Naps, a CLEC, is located in a different exchange. Ordinarily, such a call would be

subject to a toll paid by the caller to the IXC (in many cases, the originating LEC acts as the de facto IXC), which would carry the call to the facilities of the terminating LEC. In that way, the originating LEC, acting in the role of an IXC, would pay a terminating access charge to the terminating LEC. In order to allow the customer to reach the ISP without paying a toll, however, Global Naps has assigned a virtual or "VNXX" number to the ISP. A VNXX number is a telephone number that appears to be assigned to one exchange but actually is assigned to a customer in a different exchange. Thus, when the Verizon customer calls the ISP – a phone call ordinarily subject to toll charges – he does not incur any toll charges, because the switching equipment treats the call as a local call even though it is not.

That arrangement led to a dispute between Verizon and Global Naps over the applicable payment regime. Global Naps claimed that ISP-bound VNXX calls are entitled to compensation from Verizon under the federal regime established in the *ISP Remand Order*. Verizon claimed that the federal compensation plan applied only to calls delivered to an ISP in the same local calling area and that Verizon was entitled to state-ordered access charge compensation for VNXX calls to make up for the lost toll revenue that resulted from Global Naps' use of VNXX numbers. The parties submitted their dispute to the Massachusetts Department of Telecommunications and Energy (DTE) for arbitration pursuant to the process set forth in 47 U.S.C. § 252(b).

DTE ruled that "VNXX calls will be rated as local or toll based on the geographic end points of the call." DTE Order at 33 (App. 611). As such, DTE accepted language proposed by Verizon to govern compensation for VNXX calls.

*Id.* at 37-38 (App. 615-616). That language would require Global Naps to "pay Verizon's originating access charges for all [VNXX] traffic originated by a Verizon Customer ..." App. 867. Thus, DTE effectively required Global Naps to pay access charges for ISP-bound calls made to VNXX numbers.

The district court affirmed the DTE order. The court took note of Global Naps' argument that the *ISP Remand Order* preempted state regulation of compensation for ISP-bound calls, but rejected the claim on the ground that Global Naps had "impliedly consented to DTE's jurisdiction" over the rates when it voluntarily sought arbitration." *Memorandum of Decision* in Civil Action No. 02-12489 (Sept. 21, 2005) (App. 1164).

## DISCUSSION

The Court has asked us to address whether the *ISP Remand Order* was intended to preempt states from establishing the compensation regime that governs a call placed by an ILEC customer in one exchange to a CLEC-served ISP located in a different exchange using a VNXX number assigned to the ISP by the CLEC. The *ISP Remand Order* does not provide a clear answer to this question. As set forth below, the *ISP Remand Order* deemed *all* ISP-bound calls to be interstate calls subject to the jurisdiction of the FCC, and the language of the *ISP Remand Order* is sufficiently broad to encompass all such calls within the payment regime established by that Order. Nevertheless, the order also indicates that, in establishing the new compensation scheme for ISP-bound calls, the Commission was considering only calls placed to ISPs located in the same local calling area as the caller. The Commission itself has not addressed application of the *ISP Remand*

*Order* to ISP-bound calls outside a local calling area. Nor has the Commission decided the implications of using VNXX numbers for intercarrier compensation more generally. In this situation, the Commission's litigation staff is unable to advise the Court how the Commission would answer the first question posed by the Court.

In the *ISP Remand Order* (as in the *ISP Declaratory Ruling*), the Commission found that calls to ISPs are interstate calls subject to federal regulatory jurisdiction. At the same time, Congress in § 252 gave the States significant authority over interconnection agreements between carriers. Thus, while "Congress has broadly extended its law into the field of intrastate telecommunications," in a few areas such as interconnection agreements Congress "has left the policy implications of that extension to be determined by state commissions." *AT&T Corp. v. Iowa Utilities Board*, 525 U.S. 366, 385 n.10 (1999).

In some respects, the *ISP Remand Order* appears to address all calls placed to ISPs. The Commission's ruling that calls to ISPs are interstate calls because they may terminate at web sites beyond state boundaries necessarily applies to all ISP-bound calls. The Commission's theory that ISP-bound calls are "information access" calls within the meaning of § 251(g) that are thus exempted from the requirements of § 251(b) likewise applies to all ISP-bound calls. The *ISP Remand Order* is also replete with references to "ISP-bound calls" that do not differentiate between calls placed to ISPs in the same local calling area and those placed to ISPs in non-local areas.

At the same time, however, the administrative history that led up to the *ISP Remand Order* indicates that in addressing compensation, the Commission was focused on calls between dial-up users and ISPs in a single local calling area. The *Local Competition Order* and the regulations promulgated pursuant to that order contemplated that reciprocal compensation would be paid only for calls that "originat[e] and terminat[e] within a local service area." 47 C.F.R. § 51.701(b)(1) (2000); *see Local Competition Order* at 16013 ¶1034. Thus, when the Commission undertook in the *ISP Declaratory Ruling* to address the question "whether a local exchange carrier is entitled to receive reciprocal compensation for traffic that it delivers to … an Internet service provider," *id*. at 3689 ¶1, the proceeding focused on calls that were delivered to ISPs in the same local calling area. Indeed, the Commission described the "typical arrangement" (although not the exclusive arrangement) it had in mind as one where "an ISP customer dials a seven-digit number to reach the ISP service in the same local calling area." *Id*. at 3691 ¶4.

The administrative history does not indicate that the Commission's focus broadened on remand. The *ISP Remand Order* repeats the Commission's understanding that "an ISP's end-user customers typically access the Internet through an ISP service located in the same local calling area." *Id*. at 9157 ¶10. The Order refers multiple times to the Commission's understanding that it had earlier addressed – and on remand continued to address – the situation where "more than one LEC may be involved in the delivery of telecommunications

within a local service area." *Id.* at 9158 ¶12; *see also id.* at 9159 ¶13, 9163 ¶24, 9180 ¶63.

The *ISP Remand Order* thus can be read to support the interpretation set forth by either party in this dispute. The Commission itself, however, has not expressed a position on the matter. Moreover, the Commission has not addressed the more general effects on intercarrier compensation of the use of VNXX numbers. In the circumstances, it would not be possible for the Commission's litigation staff to provide an official position on a matter that the Commissioners themselves have not yet directly confronted and addressed in a rulemaking or adjudicatory proceeding. As this Court has recognized, post hoc rationalizations offered by agency counsel are not substitutes for an agency order issued in the appropriate manner. *Dubois v. U.S. Dept. of Agriculture*, 102 F.3d 1273, 1289 (1st Cir. 1996), *cert. denied*, 521 U.S. 1119 (1997); *see also Western Union Corp. v. FCC*, 856 F.3d 315, 318 (D.C. Cir. 1988) (agency rationale "must appear in the agency decision and the record; post hoc rationalizations by agency counsel will not suffice").

The Court also asked the FCC if any other provisions of the Telecommunications Act of 1996 would prohibit a State from imposing access charges on ISP-bound VNXX calls. As described above, the Commission did not directly address VNXX calls in either of its ISP orders and has not addressed VNXX calls more generally. In the circumstances, we are unable to advise the Court whether the Commission might in the future interpret any provision of the Communications Act to prohibit State-imposed access charges. For similar

reasons, we are unable to address the Court's third question regarding the standard of review of a state commission interpretation of FCC orders, another matter on which the Commission has not spoken.

Respectfully submitted,

SAMUAL L. FEDER
GENERAL COUNSEL


DANIEL M. ARMSTRONG
ASSOCIATE GENERAL COUNSEL

JOEL MARCUS (BAR NO. 110379)
COUNSEL

FEDERAL COMMUNICATIONS COMMISSION
WASHINGTON, D.C. 20554
(202) 418-1740 (TELEPHONE)
(202) 418-2819 (FAX)

March 13, 2006

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

GLOBAL NAPS, Inc.,                                )
                                                  )
                    PLAINTIFF-APPELLANT,           )
                                                  )
        V.                                         )            No. 05-2657
                                                  )
VERIZON NEW ENGLAND, INC., ET AL.,                )
                                                  )
                    DEFENDANTS-APPELLEES.          )


CERTIFICATE OF COMPLIANCE

Pursuant to the requirements of Fed. R. App. P. 32(a)(7), I hereby certify

that the accompanying "Brief for Amicus Curiae Federal Communications

Commission" in the captioned case contains 3432 words.


JOEL MARCUS (BAR NO. 110379)
COUNSEL
FEDERAL COMMUNICATIONS COMMISSION
WASHINGTON, D.C.  20554
(202) 418-1740 (TELEPHONE)
(202) 418-2819 (FAX)


March 13, 2006

## CERTIFICATE OF SERVICE

I certify that on March 13, 2006, I directed that copies of the foregoing brief be served by mail on each of the following:

Andrew Good
Good & Cormier
83 Atlantic Ave.
Boston, MA 02110

Scott Angstreich
Kellogg, Huber, Hansen, Todd
 & Evans
1615 M Street, N.W. Ste 400
Washington, D.C. 20036

Thomas A. Barnico
Assistant Attorney General
Government Bureau
One Ashburton Place, Room 2019
Boston, MA 02108

Paul G. Alfonso
General Counsel
Massachsetts Department of
 Telecommunications & Energy
One South Station, 2d Floor
Boston, MA 02110

Joel Marcus