UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| THE SOUTHERN NEW ENGLAND TELEPHONE COMPANY<br><br>v.<br><br>MCI WORLDCOM COMMUNICATIONS, INC., ET AL. | No. 3:02cv274 (SRU) |

### RULING ON JOINT MOTION TO VACATE

This matter was litigated to a final judgment, which was appealed. During the pendency of that appeal, the Second Circuit Court of Appeals issued a decision in another telecommunications appeal, *Global NAPs, Inc. v. Verizon New England, Inc.*, 454 F.3d 91 (2d Cir. 2006). The parties read that decision as conflicting with my holding on one of the issues litigated here, namely whether the Federal Communication Commission's *ISP Remand Order*,[1] 16 F.C.C.R. 9151 (Apr. 27, 2001), governs compensation for "non-local" calls to internet service providers.

The parties jointly withdrew the appeal, without prejudice, in order to return to this court and seek to vacate the pertinent portions of my rulings. Although I appreciate the opportunity to vacate the portions of my decisions that arguably conflict with a later decision of the Court of Appeals, I decline to do so. For the reasons set forth below, the Joint Motion To Vacate Judgment And To Dismiss Claim In Part (doc. # 93) is denied.

**Background**

On November 21, 2001, the Connecticut Department of Public Utility Control ("the

---

[1] The full name is *Implementation of the Local Competition Provisions in the Telecommunications Act of 1996, Intercarrier Compensation for ISP-Bound Traffic*, Order on Remand and Report and Order.

DPUC") issued a decision setting out the terms it required the Southern New England Telephone Company ("SNET") and MCI WorldCom Communications, Inc., MCI Metro Access Transmission Services, Inc., and Brooks Fiber Communications of Connecticut (collectively "MCI") to include in their proposed telecommunications interconnection agreement.  SNET and MCI both challenged that decision, each arguing that several of the required terms are inconsistent with the Telecommunications Act of 1996.  I granted both SNET's and MCI's motions for summary judgment and remanded the case to the DPUC.  *Southern New England Tel. Co. v. MCI WorldCom Communications, Inc.*, 353 F. Supp. 2d 287 (D. Conn. 2005) ("*SNET I*").  SNET then filed a motion to alter or amend the judgment, which I denied.  *Southern New England Tel. Co. v. MCI WorldCom Communications, Inc.*, 359 F. Supp. 2d 229 (D. Conn. 2005) ("*SNET II*").

      SNET appealed the grant of summary judgment in favor of MCI as well as the ruling denying SNET's motion to alter or amend judgment.  SNET's position in this court and on appeal has been that the *ISP Remand Order* only governs the delivery of calls from one Local Exchange Carrier's ("LEC") end-user customer to an Internet Service Provider ("ISP") in the same local calling area that is served by a competing LEC.  I had held that the *ISP Remand Order* governed the treatment of all ISP-bound traffic, whether the ISP was located inside or outside the local calling area of the dialing party.

      While SNET's appeal from my decisions was pending, the Second Circuit decided an appeal raising a somewhat related issue.  *Global NAPs*, 454 F.3d at 96-99.  The parties to this case suggest that my decisions are inconsistent with the Second Circuit's holding in *Global NAPs*.  After conferring with the Second Circuit's Staff Counsel, the parties filed a joint

stipulation withdrawing the appeal without prejudice in order to give me the opportunity in the first instance to determine the impact of the *Global NAPs* decision on this case.  The parties then filed the present motion, pursuant to Rule 60(b) of the Federal Rules of Civil Procedure.  That motion seeks an order "vacat[ing] the last paragraph of Part I.C of *SNET I* and all of Part I of *SNET II*, and dismiss[ing] Count II of MCI's First Amended Counterclaim and Cross-Claim insofar as it seeks an order declaring non-local ISP-bound traffic subject to the *ISP Remand Order*."  Joint Motion at 5-6.

On October 26, 2006, I held a phone conference with counsel for all parties.  The purpose of the conference was to determine the goals of the joint motion.  As I suggested during the conference, if the parties' concern is that the DPUC might face conflicting orders on remand, a Rule 41(a) stipulation to dismiss the pertinent portion of MCI's counterclaim and cross-claim would eliminate the risk of inconsistent guidance from the courts, because the ISP-bound traffic issue would be eliminated from the case.  It became clear that at least some of the parties seek an order vacating portions of my decisions in order to affect the persuasive value of those decisions in other litigation around the country.  During that conference call, I expressed my reluctance to vacate a decision I believe to be correct; I now formalize that position by ruling on the motion.

**Discussion**

There are several reasons why I decline to vacate portions of my earlier rulings.  The most fundamental reason is that I do not read the Second Circuit's holding in *Global NAPs* as inconsistent with my decisions on the question whether the *ISP Remand Order* precludes the DPUC from subjecting ISP-bound traffic to reciprocal compensation.  Indeed, the Second Circuit expressly did not reach that issue: "Whether [state boards] have authority to impose access fees

on ISP-bound traffic is for another day and for clarification by the FCC." *Global NAPs*, 454 F.3d at 99.

In *Global NAPs*, the Second Circuit decided "whether the [Vermont Public Service] Board overstepped its authority in concluding that Board-determined calling areas govern whether traffic is subject to reciprocal compensation or access charges." *Id.* at 96-97. The parties to the *Global NAPs* appeal disputed "only *which* calling area (Board-determined or local-carrier determined) provides the relevant framework for ascertaining compensation." *Id.* at 97 (emphasis supplied). The Second Circuit noted that "[t]he answer might lead to a further question: whether ISP-bound traffic is subject to access charges. But we are limited here to the questions actually presented: *how are the boundaries of local calling areas to be determined* for purposes of intercarrier compensation, *and what agency is to make that determination*?" *Id.* (emphasis supplied). The Second Circuit expressly stated that "the question whether ISP-bound traffic is subject to access fees is not before us." *Id.* at 97 n.6.

I agree with the Second Circuit's conclusion that "the FCC has not disturbed the states' traditional authority to define local calling areas." *Id.* at 98. I reached the same conclusion myself. *See SNET I*, 353 F. Supp. 2d at 291-92 ("The FCC resolved that issue by concluding 'state commissions have the authority to determine what geographic areas should be considered "local areas" for the purpose of applying reciprocal compensation obligations under section 251(b)(5).'").

The portion of the *Global NAPs* decision that the parties believe contradicts my decisions is merely dicta. The discussion of the *ISP Remand Order* in *Global NAPs* has no bearing on the issue the Second Circuit said it was deciding, whether state boards retain the authority to define

local calling areas; instead, it relates only to the compensation issue that the Court expressly chose not to consider.

The second reason I decline to vacate the pertinent portions of my decisions is that I respectfully disagree with the Second Circuit's discussion in dicta of the ISP-bound compensation issue. In *Global NAPs*, the Second Circuit's discussion of the *ISP Remand Order* was essentially limited to one paragraph. That paragraph did not cite to the *ISP Remand Order* itself, but instead relied on an amicus brief filed by FCC counsel in a First Circuit appeal at the request of that Court. *See Global NAPs*, 454 F.3d at 99, *citing* Brief for FCC as Amicus Curiae, *Global NAPs, Inc. v. Verizon New England, Inc.*, 444 F.3d 59 (1st Cir. 2006) (Mar. 14, 2006) ("FCC Brief").[2] The passage from the FCC Brief that the Court quoted in *Global NAPs* is not, in my view, representative of the overall discussion of the *ISP Remand Order* by FCC counsel in that brief. Notably, the FCC Brief acknowledged that "the *ISP Remand Order* deemed *all* ISP-bound calls to be interstate calls subject to the jurisdiction of the FCC, and the language of the *ISP Remand Order* is sufficiently broad to encompass all such calls within the payment regime established by that Order." FCC Brief at 10. Similarly, FCC counsel wrote: "In the *ISP Remand Order* . . . , the Commission found that calls to ISPs are interstate calls subject to federal regulatory jurisdiction." *Id.* at 11.

The FCC Brief posited that the *ISP Remand Order* "does not provide a clear answer" to the question posed by the First Circuit: "whether the *ISP Remand Order* was intended to preempt states from establishing the compensation regime that governs a call placed by an ILEC customer in one exchange to a CLEC-served ISP located in a different exchange . . . ." FCC Brief at 10.

---

[2] The FCC Brief has been docketed in this case as docket no. 94-5.

Nevertheless, the FCC Brief describes the *ISP Remand Order* very similarly to the way I did. FCC counsel wrote: "The Commission's ruling that calls to ISPs are interstate calls because they may terminate at web sites beyond state boundaries necessarily applies to all ISP-bound calls. The Commission's theory that ISP-bound calls are 'information access' calls within the meaning of § 251(g) that are thus exempted from the requirements of § 251(b) likewise applies to all ISP-bound calls." FCC Brief at 11. That passage closely resembles my analysis in *SNET I*: "Applying this rationale, the FCC concluded that ISP-bound traffic was an 'information service' within the meaning of section 251(g) and therefore not subject to section 251(b)(5) reciprocal compensation." 353 F. Supp. 2d at 293.

In short, the Second Circuit's very limited discussion in dicta of the *ISP Remand Order*, which consisted primarily of an unrepresentative selection of language from the FCC Brief rather than an examination of the *ISP Remand Order* itself, does not convince me that I have incorrectly interpreted that Order. As I noted in *SNET II*, in the *ISP Remand Order*, the FCC began with the question whether "local" ISP-bound traffic was exempt from reciprocal compensation.

> In answering the question, the FCC: (a) disclaimed the use of the term "local," (b) held that all traffic was subject to reciprocal compensation unless exempted, (c) held that all ISP-bound traffic was exempted because it is "information access," (d) held that all ISP-bound traffic was subject to the FCC's jurisdiction under section 201, and (e) proceeded to set the compensation rates for all ISP-bound traffic. In short, though the FCC started with the question whether "local" ISP-bound traffic was subject to reciprocal compensation, it answered that question in the negative on the basis of its conclusion that all ISP-bound traffic was in a class by itself.

359 F. Supp. 2d at 232. Nothing in the *Global NAPs* decision suggests this analysis of the *ISP Remand Order* is mistaken.

The final reason that I decline to vacate portions of my prior decisions relates to public

policy.  I do not believe that I should employ the equitable power conferred by Rule 60(b) to vacate a decision under review absent extraordinary circumstances.  There is a public interest that counsels against granting the motion to vacate here.

> "Judicial precedents are presumptively correct and valuable to the legal community as a whole.  They are not merely the property of private litigants and should stand unless a court concludes that the public interest would be served by a vacatur." *Izumi Seimitsu Kogyo Kabushiki Kaisha v. U.S. Philips Corp.*, 510 U.S. 27, 40, 114 S. Ct. 425, 428, 126 L. Ed. 2d 396 (1993) (Stevens, J., dissenting).  Congress has prescribed a primary route, by appeal as of right and certiorari, through which parties may seek relief from the legal consequences of judicial judgments.  To allow a party who steps off the statutory path to employ the secondary remedy of vacatur as a refined form of collateral attack on the judgment would – quite apart from any considerations of fairness to the parties – disturb the orderly operation of the federal judicial system. [citation omitted]

*U.S. Bancorp Mortgage Co. v. Bonner Mall Partnership*, 513 U.S. 18, 26-27 (1994).  Because some of the parties have acknowledged that their intent is to eliminate my decisions as precedent, vacatur is inappropriate.  If the Second Circuit, after reviewing the *ISP Remand Order*, determines that my decisions incorrectly interpreted that Order, those decisions may ultimately be reversed or vacated.  Unless and until then, the decisions in *SNET I* and *SNET II* will continue to provide whatever persuasive value they may have.

**Conclusion**

The Joint Motion To Vacate Judgment And To Dismiss Claim In Part (doc. # 93) is denied, without prejudice to the parties dismissing some or all of MCI's counterclaims and cross-claims pursuant to Rule 41(a).

It is so ordered.

Dated at Bridgeport, Connecticut, this 30th day of October 2006.

                                  /s/ Stefan R. Underhill
                                     Stefan R. Underhill
                                     United States District Judge